[L. A. No. 26771. In Bank. May 7, 1963.]

EMMETT O'MALLEY, Plaintiff and Appellant, v. WIL-SHIRE OIL COMPANY, Defendant and Respondent.

Levy, Russell, DeRoy & Glow and Mervin N. Glow for Plaintiff and Appellant.

Curtis, Laymon & Vail and Richard W. Curtis for Defendant and Respondent.

TOBRINER, J.—While the parties to a collective bargaining agreement may delineate the scope of an arbitration provision according to their design, neither the language of the provision in the instant case, nor the facts, support the contention that the arbitration procedure excluded the arbitrability of the present grievance of the union. We hold, for the reasons that follow, that the trial court, by accepting the posited contentions of the defendant, improperly resolved the merits of the dispute. Instead of narrowly and exclusively determining the question of arbitrability, the court invaded the province of the arbitrator.

Plaintiff O'Malley is president of, and sues in a representative capacity for, the Oil, Chemical and Atomic Workers International, Union Local 1-128, AFL-CIO (hereinafter termed "union"). Defendant, the Wilshire Oil Company (hereinafter termed "company") is engaged in the manufacture and processing of petroleum in interstate commerce. Since 1948 the union has been the certified bargaining agent of the company's employees.

In April of 1959 the union and the company entered into a collective bargaining agreement covering wages, hours and working conditions of the company's employees. Among other matters, the agreement contained a recognition clause, a no-strike clause, and a provision relating to contracting out of work. The agreement established a grievance procedure culminating in arbitration for the resolution of disputes with regard to the agreement.[1]

In December 1960 the union submitted a grievance, which, in substance, protested the contracting out by the company of some of its transportation work. Subsequently, the company rejected the grievance. The union, pursuant to the established procedure, sought arbitration of the dispute. The company refused to submit the dispute to arbitration. As a result, the union filed a petition for an order directing arbitration.

In its petition the union incorporated by reference the statement of the grievance contained in its letter to the company, which alleged as to contract work the company's violation of article 15[2] and "any other Article or Articles that may be found to be violated in the process of settling the complaint." The petition concluded that a dispute therefore existed with regard to "the interpretation and application" of the contract, thereby requiring arbitration.

In its answer to the petition the company relied on language in article 22 of the agreement with respect to arbitration to the effect that: "Under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of this Agreement. . . ." The company then set out efforts of the union, prior to and after the grievance, to

---

[1]The relevant portions of Article 22 relating to grievances are as follows:

"Grievances relating to the application and interpretation of this Agreement shall be handled as follows:

"(c) If the grievance is not settled as a result of the foregoing, then the Union may . . . request arbitration thereof. . . . Under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of this Agreement. . . ."

[2]Article 15 provides: "Except for office janitorial services or in case of an emergency the Company shall not employ or otherwise engage contract labor to perform upkeep and repair work normally performed by employees covered by this Agreement until all laid off employees who still retain their rehiring rights . . . have been offered reemployment with the Company. . . ."

modify article 15 in order to include more explicit and stringent limitations upon the company's right to contract out work. The company contended that since the practice of contracting out transportation work had long been a company policy and since the union's proposals for its limitation had been rejected at the collective bargaining table, the agreement permitted such policy and the grievance was specifically excluded from arbitration.

The trial court denied the request of the petition, concluding that: "[I]nterpreting the Articles of Agreement of April 10, 1959 in accordance with the intentions of the parties as therein expressed and in the light of all of the facts and circumstances surrounding the negotiations for and execution of prior and subsequent agreements, no agreement can be found between Respondent and Petitioner which requires the arbitration of grievances arising out of or based upon the contracting out of transportation work."

█ In the enforcement of provisions of collective bargaining agreements obligating the parties to arbitrate disputes, state courts exercise concurrent jurisdiction with federal courts. (*Charles Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483].) In so doing state courts must, however, in adjudicating an action which could have been brought in the federal courts under section 301 of the Labor Management Relations Act, apply federal law. (*Local 174 Teamsters, etc. of America* v. *Lucas Flour Co.* (1962) 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593].) Since in the instant case the company is engaged in interstate commerce, the parties agree that federal law must necessarily govern.

The wellspring of federal law respecting the enforcement of arbitration agreements consists of three cases decided by the Supreme Court in 1960.[3] As we shall point out, these decisions, recognizing the special nature of the collective bargaining agreement and the crucial role of the arbitrator in resolving disputes arising under it, narrowly confine the role of the court as contrasted with that of the arbitrator.

We have recently analyzed this trilogy of United States Supreme Court cases in *Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313]. In that case

---

[3] *United Steelworkers of America* v. *American Mfg. Co.*, 363 U.S. 564, 569 [80 S.Ct. 1343, 1363, 4 L.Ed.2d 1403, 1432]; *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409]; *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424].

we criticized the prior doctrine of *International Assn. of Machinists* v. *Cutler-Hammer, Inc.* (1947) 271 App. Div. 917 [67 N.Y.S.2d 317]; affd. 297 N.Y. 519 [74 N.E.2d 464]. *Cutler-Hammer* had held that a court could properly reject a petition to arbitrate a matter which, in the court's view, did not compose an arbitrable issue because petitioner's asserted interpretation of the contract transgressed the plain meaning of the words.[4]

In *Posner* we described and adopted the ruling of the Supreme Court cases; we said: "This rule is to the effect that, where the collective bargaining agreement provides for arbitration of all disputes pertaining to the meaning, interpretation and application of the collective bargaining agreement and its provisions, any dispute as to the meaning, interpretation and application of any specific matter covered by the collective bargaining agreement is a matter for arbitration. Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage. The parties have contracted for an arbitrator's decision and not for that of the courts." (56 Cal.2d at p. 175.) Although the issue in *Posner* did not involve interstate commerce and therefore did not necessarily invoke the federal rule as described by the United States Supreme Court, we nevertheless as a matter of policy followed the federal approach. We held that the trial court, instead of confining itself to the issue of whether the dispute was subject to arbitration, improperly passed upon the merits of the issue.

We believe the United States Supreme Court cases are dispositive of the present problem. Thus in *United Steelworkers of America* v. *American Mfg. Co., supra* (1960) 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403], the union brought suit to compel arbitration, under an agreement providing for arbitration of all disputes "as to the meaning, interpretation and application" of the provisions of the agreement. The grievance there related to a contractual pro-

---

[4]The court's statement of the doctrine follows: "While the contract provides for arbitration of disputes as to the 'meaning, performance, non-performance or application' of its provisions, the mere assertion by a party of a meaning of a provision which is clearly contrary to the plain meaning of the words cannot make an arbitrable issue. . . . If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." (*International Assn. of Machinists* v. *Cutler-Hammer, Inc.,* 271 App.Div. 917 [67 N.Y.S.2d 317, 318], affd. 297 N.Y. 519 [74 N.E.2d 464].)

vision that the employer would reemploy and promote employees on the principle of seniority "where ability and efficiency are equal." An employee left his job due to an injury and while absent brought an action for compensation benefits. The parties settled the case; the employee's physician indicated that the employee had become 25 per cent "permanently partially disabled." Two weeks after the settlement the union filed a grievance charging that the employee was entitled to return to his job by virtue of the seniority provision of the collective bargaining agreement. The company refused to arbitrate the grievance; the union filed an action in the United States District Court. Stating that the employee's acceptance of the settlement estopped him from claiming seniority or employment rights, the District Court rendered a summary judgment against the union.

The Court of Appeals affirmed the District Court on a different basis than that which that court had expressed, holding that the grievance was "a frivolous, patently baseless one, not subject to arbitration under the collective bargaining agreement." (P. 566.) The Supreme Court reversed indicating that the Court of Appeals, in becoming embroiled in the merits, had misconstrued the role of the court.

■ The Supreme Court stated: "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." ■ The court concluded: "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." (363 U.S. at pp. 567-568 [80 S.Ct. 1343, 1346, 4 L.Ed.2d 1406-1407].)

■ Without more, the principles above elaborated would

resolve the instant case. The union has alleged in its petition that the company's action in contracting out transportation work violates article 15 and may also impliedly violate other provisions of the agreement.[5] To the extent that the company's contentions constitute a denial of the merits of these allegations, judicial consideration is clearly foreclosed.

The company seeks to avoid this result by arguing that the parties excluded this grievance from the arbitration provisions. As already indicated, the company relies on that part of the arbitration provision (article 22) which states: "Under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of this Agreement. . . . " The company describes two attempts of the union to extend the explicit coverage of article 15; the first transpired when the provision was adopted in 1950 and the second in 1961, subsequent to the present grievance. The position of the company appears to be that the bargaining history with respect to article 15 indicates that the union now seeks a "modification" of the agreement and that the parties have specifically prohibited the arbitrator from effecting any such modification.

An analysis of this contention requires consideration of the second decision of the 1960 trilogy, *United Steelworkers of America* v. *Warrior & Gulf Navigation Co., supra* (1960) 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409]. The grievance there, similarly, involved the employer's right to contract out work previously performed by its employees. The employer, Warrior & Gulf Navigation Co., maintained a terminal for the performance of maintenance and repair work on barges used in its business of transporting steel and steel products. It had laid off a number of employees, due in part to the contracting out of maintenance work which had previously been performed by its employees. The companies with which it had contracted out the performance of the work utilized

[5]Implied limitations arising from provisions of a collective bargaining agreement [such as recognition of seniority] have been found by both the courts and the arbitrators. These limitations have been enforced even where the agreement in no way expressly limited the employer's power to contract out. See *United Steelworkers* v. *Warrior & Gulf Navigation Co., supra,* for recognition of the power of the arbitrator to find such an implied limitation. In *International Union, U.A.W.* v. *Webster Elec. Co.* (7th Cir. 1962) 299 F.2d 195, the court sustained a declaratory judgment finding an implied limitation as to contracting out. See also Cox, *Reflections Upon Labor Arbitration* (1959) 72 Harv.L.Rev. 1482, 1497, 1517; 60 Mich. L. Rev. 1173 (1962).

Warrior & Gulf's supervisors to oversee the work, and hired, at reduced wages, some of the laid-off employees. The union brought a grievance objecting to Warrior & Gulf's actions. The company refused to arbitrate, relying upon a provision in the collective bargaining agreement to the effect that "matters which are strictly a function of management" were not subject to arbitration. It contended that contracting out was a "function of management" and the parties had thereby excluded such a grievance from arbitration.

In rejecting this contention, the Supreme Court called attention to the unique nature of the collective bargaining contract and to the vital and dynamic role of the arbitrator in the area of industrial relations.[6] The majority opinion of Justice Douglas sets forth: "The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . A collective bargaining agreement is an effort to erect a system of industrial self-government. . . . [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." (363 U.S. at pp. 578-581 [80 S.Ct. 1351-1352, 4 L.Ed.2d 1414-1417].)

This analysis led the Supreme Court to conclude: "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement." (363 U.S. at p. 581 [80 S.Ct. 1352, 4 L.Ed.2d 1417].)

Arbitration is, of course, a matter of contract, and the parties may freely delineate the area of its application.

[6]For enlightened discussion of the nature of the collective bargaining agreement and the role of the arbitrator, see Shulman, *Reason, Contract, and Law in Labor Relations*, 68 Harv.L.Rev. 999 (1955); Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L.Rev. 1482 (1959).

■ The court's role, according to the Supreme Court, however, must be strictly limited to a determination of whether the party resisting arbitration agreed to arbitrate. A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (363 U.S. at pp. 582-583 [80 S.Ct. 1353, 4 L.Ed.2d 1417-1418].)

Applying these principles the Supreme Court observed: ". . . if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception. Every grievance in a sense involves a claim that management has violated some provision of the agreement." (363 U.S. at p. 584 [80 S.Ct. 1354, 4 L.Ed.2d 1418] ; emphasis added.)

The Supreme Court then held the arbitration clause covered the grievance as to contracting out. ". . . A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision. Nor is there any showing that the parties designed the phrase 'strictly a function of management' to encompass any and all forms of contracting out. In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to use the services of an arbitrator." (363 U.S. at pp. 584-585 [80 S.Ct. 1354, 4 L.Ed.2d 1418-1419] ; emphasis added.)

Subsequent federal decisions have reemphasized the principle of Warrior that the arbitration clause covers the grievance in the absence of manifest exclusion. Thus in Procter

& *Gamble Independent Union* v. *Procter & Gamble Mfg. Co.*
(2d Cir. 1962) 298 F.2d 644, 645-646, the court said: "The
nub of the matter is that under the broad and comprehensive
standard labor arbitration clause every grievance is arbi-
trable, unless the provisions of the collective bargaining
agreement concerning grievances and arbitration contain
some clear and unambiguous clause of exclusion, or there is
some other term of the agreement that indicates beyond per-
adventure of doubt that a grievance concerning a particular
matter is not intended to be covered by the grievance and
arbitration procedure set forth in the agreement."

In *Taft Broadcasting Co.* v. *Radio Broadcast Technicians
Local Union No.* 253 (5th Cir. 1962) 298 F.2d 707, 709, the
Court likewise stated, "Two principles are emphasized.
First, the purpose to exclude a particular type of dispute
from the arbitration promise must be clearly spelled out. And
second, courts must overcome the temptation of passing on
the intrinsic merits of the controversy under the guise of de-
termining whether the dispute is within the promise to arbi-
trate." (See also *Association of Westinghouse Salaried
Emp.* v. *Westinghouse Electric Corp.* (3d Cir. 1960) 283
F.2d 93; *International Assn. of Machinists* v. *International
Aircraft Services, Inc.* (4th Cir. 1962) 302 F.2d 808; *Inter-
national Union, U.A.W.* v. *Cardwell Mfg. Co.* (10th Cir. 1962)
304 F.2d 801.)

The company seeks to avoid *Warrior* by describing alleged
elements in the instant case which it considers to be dis-
tinguishing factors. First, it argues that the arbitration
clause there was broader and the exclusion clause was
"vague." Second, it notes that here, unlike in *Warrior*, the
contract includes a specific clause dealing with contract
work. Finally, it relies upon the instant bargaining history
with respect to the contract-work provision. We shall explain
why we have concluded that the attempted distinctions can-
not prevail.

The arbitration provision in *Warrior* provided for arbitra-
tion "Should differences arise . . . as to the meaning and
application of the provisions of this agreement, or should
any local trouble of any kind arise." The company empha-
sizes the reference to "local trouble." The Supreme Court,
however, specifically relied upon the language in the provi-
sion before it which was essentially the same as that of the
instant contract. The court stated: "The grievance alleged
that the contracting out was a violation of the collective bar-

gaining agreement. There was, therefore, a dispute 'as to the meaning and application of the provisions of this Agreement' which the parties had agreed would be determined by arbitration." (363 U.S. 574 at p. 585 [80 S.Ct. 1354, 4 L.Ed.2d 1419].)

Any remaining doubt is resolved by the fact that the subsequent federal cases which we have cited *supra* held that arbitration provisions similar to the present one were of sufficient breadth to invoke the principles of the *Warrior* decision.

The company's argument that in *Warrior,* unlike here, the exclusion clause was "vague" is equally without merit. The instant clause is not only "vague," but hardly seems to reach the status of an "exclusion" clause. To state that the arbitrator lacks power to amend, modify or otherwise change an agreement is merely to restate explicitly the inherent limitation in the arbitrator's power to handle grievances relating to the *"application and interpretation of this Agreement."* If the provision empowers the arbitrator only to apply and interpret the agreement, he is not authorized to amend it.[7]

In any event, whatever the company contends as to vagueness, to construe the exclusion clause as the company desires would countenance a full-scale leap into the merits of the dispute in order to construe the limitations of arbitrability. In *Association of Westinghouse Salaried Emp.* v. *Westinghouse Electric Corp.* (3d Cir. 1960) 283 F.2d 93, the employer relied upon a similar provision which stated that an arbitrator could not "[a]dd to, detract from, or in any way alter the provisions of this Agreement. . . ." The employer sought to show that the parties had understood a controverted provision to have a particular meaning and that the grievance was therefore excluded from arbitration. The court observed: "This is just the thing which the Supreme Court has told us to avoid." (283 F.2d at p. 95.)

Although the company heavily stresses *Local No. 725, Intl. Union of Operating Engineers* v. *Standard Oil Co. of Indiana*

[7] In *International Union U.A.W.* v. *Weatherhead Co.* (N.D. Ohio 1962) 203 F.Supp. 612, in a case also dealing with contracting out, the agreement provided: "The Impartial Arbitrator shall interpret and apply this Agreement but he shall not have authority to alter or modify the terms of this Agreement." The court in comparing this provision with the one in *Warrior & Gulf* observed: "By contrast, the contract in the instant litigation contained absolutely no provision limiting the scope of arbitration." (At p. 615.)

(D.C. N.Dak. 1960) 186 F.Supp. 895, the exclusion clause of that contract differed from the instant provision. It stated that: ". . . *proposals* to add to or change this Agreement shall not be arbitrable and that no *proposal* to modify, amend or terminate this Agreement, as well as any matter or subject arising out of or in connection with such proposal, may be referred for arbitration. . . ." (At p. 897; emphasis added.) The court referred to the bargaining history to determine what "proposals" had been made to give content to this specific exclusion of such "proposals" from arbitration. (See Note *"Arbitrability" of Labor Disputes*, 47 Va. L.Rev. 1182, 1202 (1961).)

We find no merit in the company's second point of attempted distinction that the contract before us, unlike that in *Warrior*, incorporates a specific clause as to contract work. If the courts and the arbitrators can find *implied* limitations on the power to subcontract,[8] it is difficult to see any diminution of such limitations by the fact that the parties have restricted such power in express or particular language. The company here urges in essence an application of the principle of *inclusio unius est exclusio alterius*. To do so, however, is to overlook the differences between a collective bargaining agreement and a standard commercial contract, and to ignore the Supreme Court's words of caution against blind application of contractual rules to "a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." (*United Steelworkers of America* v. *Warrior & Gulf Navigation Co., supra*, 363 U.S. 574, 578 [80 S.Ct. 1351, 4 L.Ed.2d 1409, 1415].)

The final refuge of the company in the bargaining history of the clause as a distinguishing feature between this case and *Warrior* overlooks the very holding and purport of *Warrior*. There the company presented evidence of bargaining history, but the majority opinion of the Supreme Court did not even refer to it. In his dissent Justice Whittaker stressed the fact that the employer had contracted out work since the beginning of its operation 19 years earlier and that the union had repeatedly sought to negotiate limitations of the employer's power to do so. (363 U.S. 574, 587 [80 S.Ct. 1347, 1355, 4 L.Ed.2d 1409, 1420].) Indeed, the failure of the Supreme Court so much as to consider this history has led some courts and commentators to conclude that consideration

---

[8] See fn. 5, *supra.*

of bargaining history in the interpretation of the arbitration provision is foreclosed.[9]

Even if we were to refer to the bargaining history, however, we would do so only to determine the area of the agreement to arbitrate and not the merits of the dispute. The company's showing here reaches to the latter rather than the former province; the effort fails. As the United States Court of Appeals for the Ninth Circuit points out in *Pacific Northwest Bell Tel. Co.* v. *Communication Workers of America* (9th Cir. 1962) 310 F.2d 244, the test is ''whether judicial construction of the arbitrability clause would require that the underlying dispute be first resolved in order to determine whether it is subject to arbitration.'' (At p. 248.) The essential distinction therefore becomes whether the aim of the presentation is to indicate agreement on the underlying issue or to show that the parties agreed that a particular area was not a subject for arbitration. Only evidence of the latter sort of agreement is admissible under *Warrior*.

In surveying the bargaining history the court cannot, in determining the question of arbitrability, decide the merits. As the Court of Appeals points out, the court cannot lay hold of the preliminary problem of the province of the arbitrator to reach and resolve the principal question itself. ''Such was the case in *Warrior*,'' says the Court of Appeals, further declaring: ''. . . before the court could find that the dispute was excluded from arbitration, it was necessary to determine whether the company had retained this disputed right as a function of management: the merits of the underlying dispute itself.'' (310 F.2d at pp. 248-249.)

The bargaining history which the company seeks to present here pertains to the construction of article 15 and not the construction of the agreement to arbitrate. As such, it relates to, and resolves, the merits of the dispute; it is not solely directed to proof of an agreement to exclude a particular subject-matter from arbitration. Consideration of the bargaining history in the present case is, therefore, patently improper.

The Supreme Court's decision in *Warrior* thus directly governs the instant issue. The company's claimed distinguishing factors merely fabricate an elaborate camouflage for entice-

[9]*Association of Westinghouse Salaried Emp.* v. *Westinghouse Electric Corp.* (3d Cir. 1960) 283 F.2d 93; *International Union U.A.W.* v. *Cardwell Mfg. Co.* (10th Cir. 1962) 304 F.2d 801; Note ''*Arbitrability*'' *of Labor Disputes,* 47 Va.L.Rev. 1182 (1961).

ment of the court into a resolution of the merits of the dispute. By accepting the invitation, the trial court allowed itself to resolve the merits and thereby to invade the realm of the arbitrator. Yet federal law admittedly governs this case, and the United States Supreme Court has expressly enjoined determination of the merits of a grievance ''under the guise of interpreting the grievance procedure of collective bargaining agreements.'' (*United Steelworkers of America* v. *American Mfg. Co., supra* (1960) 363 U.S. 564 at p. 569 [80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403, 1407].)

For this reason, we hold that the trial court's denial of the petition for order directing arbitration was incorrect.

The judgment is reversed.

Gibson, C. J., Traynor, J., Peters, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal, and concurred in by Presiding Justice Wood and Justice Lillie (*O'Malley* v. *Wilshire Oil Co.*, (Cal.App.) 25 Cal.Rptr. 748), which is as follows:

Petitioner appeals ''from the judgment . . . denying Petitioner's Petition for Order Directing Arbitration.'' The petition was brought in the name of ''. . . EMMETT O'MALLEY individually and in a representative capacity for and on behalf of OIL, CHEMICAL AND ATOMIC WORKS INTERNATIONAL UNION LOCAL 1-128, AFL-CIO, an unincorporated association; its officers and members, for an Order Directing Wilshire Oil Company, a corporation, to Proceed to Arbitration.''

A résumé of some of the facts is as follows: in April 1959 Wilshire Oil Company (hereinafter referred to as the ''Company'') and the Oil, Chemical and Atomic Workers International Union, Local 1-128, AFL-CIO (hereinafter referred to as the ''Union'') entered into a written collective bargaining agreement under which the Company recognized the Union as the exclusive bargaining agent of the employees of the Company in the divisions therein enumerated. This agreement was negotiated through the process of collective bargaining and superseded and cancelled prior agreements similarly negotiated between the Company and the Union, with reference to said employees, respectively, dating back to April 29, 1948, when the Union was certified by the National Labor

Relations Board as the duly authorized bargaining agent for the employees of the Company.

During the year 1950 the Union served written notice upon the Company of its desire to modify and amend the collective bargaining agreement then in effect between the Company and the Union and served its proposed written amendments to said agreement upon the Company. One of the proposed amendments provided in effect that *no work* as listed in the schedules attached to the agreement (transportation work was then embraced in said schedules) would be let to any contractor or subcontractor unless agreed upon by the Employer and the Union's committee. The Company rejected this proposal but finally agreed to the insertion of a provision, article 15, placing certain restrictions upon the Company's contracting-out of upkeep and repair work.[1]

On December 27, 1960, the Union submitted a grievance which in substance protested the contracting out by the Company of some of its transportation work.[2]

The collective bargaining agreement between the Company and the Union, which was in effect at the time that the grievance was presented, contained a provision for the processing

---

[1]Article 15 provides in pertinent part as follows:

"CONTRACT WORK

"*General*

"1. Except for office janitorial services or in case of an emergency the Company *shall not employ or otherwise engage contract labor to perform up-keep and repair work* normally performed by employees covered by this Agreement until all laid off employees who still retain their rehiring rights . . . have been offered reemployment with the Company. . . .

"*Preference to Wilshire Employees*

"2. When it is necessary for the Company to employ contract labor to supplement its work force *for upkeep and repair work,* preference shall be given to Wilshire employees for the jobs paying the higher wage rates provided such employees are qualified.

"*Contractors' Wage Rates*

"3. . . . . . . . . . .

"*New Construction or Additions*

"4. This Article shall not apply to work in connection with the construction of new facilities or additions to existing facilities." (Emphasis added.)

[2]The "Complaint or Grievance Report" submitted to the Company provides in pertinent part as follows:

"On December 20, 1960, the Adjustment Committee became aware that the Company was using contractors to do work normally covered by the Agreement while employees of the Company in the Truck Driver classification were laid off. The Adjustment Committee contends that the Company is in violation of the current Articles of Agreement between the . . . Company . . . and . . . Union, Article 15, and any other Article or Articles that may be found to be violated in the process of settling this complaint.

"We therefore contend that the Company will have to pay their employee or employees in the Truck Driver classification who were on the

and arbitration of disputes and grievances relating to the application and interpretation of said agreement, subject to the following condition, to wit:

"ARTICLE 22

"GRIEVANCES

"Right of Grievance

"1.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Procedure for Handling Grievances

"2.    .    .    .    .    .    .    .    .    .    .    .    .    .

"(a)    .    .    .    .    .    .    .    .    .    .    .    .

"(b)    .    .    .    .    .    .    .    .    .    .    .    .

"(c) Arbitration

". . . Under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of this Agreement or any amendments hereto, or establish or change wage rates or classifications. . . .

"General

"3.    .    .    .    .    .    .    .    .    .    .    .    ."

Since the contract between the Company and the Union in force in December 1960 was to be opened by the Union for the negotiating of amendments, the parties agreed that said grievance be held in abeyance pending the conclusion of such negotiations. The Union sought to obtain an amendment of article 15. The proposed amendment sought to enlarge the restrictions placed upon the Company relative to contract work is as follows:

"1. Except for office janitorial services or in case of an emergency the Company shall not employ or otherwise engage contract labor *to perform any work* . . . ." (Emphasis added.)

Throughout all of the 1961 negotiations between the Company and the Union, which consumed a period of approximately six months, the Company resisted the proposed change in the contract relating to contract work. Ultimately the parties entered into a new Agreement which contained the same contract work clause as is contained in the Articles of Agreement dated 1959. (See footnote 1.)

At that point the Union elected to prosecute further its grievance under the former contract and demanded that said grievance be submitted to arbitration. The Company refused

---

laid-off status and who would be doing this work if it were not for a contractor, all lost monies due them since their layoff, and reinstate them with full continuity of seniority."

to submit this grievance to arbitration and the Union filed a petition in the superior court to compel the Company to arbitrate this dispute.

On November 14, 1961, the findings of fact and conclusions of law were filed.[3] The judgment after hearing on motion was filed November 27, 1961, and entered December 4, 1961. It provides in pertinent part that "the motion be denied and that said petition be dismissed." This appeal followed.

[3]The findings of fact and conclusions of law provide as follows:

"FINDINGS OF FACT

"1. That at all times mentioned herein Respondent has been engaged in an industry affecting interstate commerce and has employed in said industry employees for whom the Oil, Chemical and Atomic Workers International Union Local 1-128, AFL-CIO has been certified by the National Labor Relations Board as the duly authorized bargaining agent.

"2. That the dispute which forms the basis for the grievance referred to herein grew out of the contracting out by Respondent of a portion of its transportation and trucking requirements during the term of the Articles of Agreement dated April 10, 1959.

"3. That contracting out of transportation work is and has been for many years a policy of Respondent.

"4. That the only article contained in said Articles of Agreement dated April 10, 1959, which purports in any way to impose restrictions upon the contracting out of work by Repondent is an article numbered Article 15, entitled 'Contract Work,' the scope of which article is and was intended to be limited to the contracting out of upkeep and repair work.

"5. The said Article 15 of said Articles of Agreement dated April 10, 1959, does not and was not intended by the parties to extend to or impose any restrictions upon the contracting out of transportation work by Respondent.

"6. That during the collective bargaining negotiations carried on between the Petitioner and Respondent in the year 1960, Petitioner sought unsuccessfully to extend the scope of the restrictions to be contained in said Article 15 to include among other things the contracting out of transportation work.

"7. That during the collective bargaining negotiations carried on between Petitioner and Respondent in 1961, which ultimately were concluded by the adoption of new Articles of Agreement dated September 6, 1961, superseding the Articles of Agreement of April 10, 1959, Petitioner again sought unsuccessfully to extend the scope of the restrictions of Article 15 to include among other things contracting out of transportation work.

"8. That Article 22 of said Articles of Agreement dated April 10, 1959, which sets forth the procedure for processing grievances and the terms and conditions under which the parties have agreed to submit unresolved grievances to arbitration specifically provides that under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of said Agreement.

"CONCLUSIONS OF LAW

"1. That the substantive rights of the parties are controlled by the Federal substantive law under Section 301 of the Labor-Management Relations Act.

"2. That interpreting the Articles of Agreement of April 10, 1959,

There is no dispute of the fact that the Company is an industry affecting interstate commerce within the meaning of section 301 of the Labor Management Relations Act of 1947 as amended, 29 U.S.C.A. section 141 et seq. The state court in the interpretation and application of the applicable agreement on arbitration between the Company and the Union must apply federal substantive law governing collective bargaining agreements. (*Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483, 49 L.R.R.M. 2619]; *Local 174, Teamsters, etc. of America* v. *Lucas Flour Co.,* 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593, 49 L.R.R.M. 2117]; *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]; *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal.2d 45 [315 P.2d 322].)

The gist of the federal law is that: (1) arbitration is a matter of contract; (2) courts may not examine the merits of the grievance but must limit their inquiry to whether the claim, on its face, is governed by the agreement; (3) doubt as to arbitrability is to be resolved in favor of arbitrability; and (4) unless excluded, disputes pertaining to the agreement are arbitrable. (See *United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403]; *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409].)

Appellant states the issue to be resolved on this appeal as follows: ''Under applicable law may arbitration be denied in the absence of uncontrovertible proof that the contract specifically excludes the subject matter from the grievance and arbitration procedures of the collective bargaining agreement?''

Respondent chooses to state the issue as follows: ''Where, as in the case at bar, the parties to a collective bargaining agreement have negotiated concerning demands made by the

in accordance with the intentions of the parties as therein expressed and in the light of all of the facts and circumstances surrounding the negotiations for and execution of prior and subsequent agreements, no agreement can be found between Respondent and Petitioner which requires the arbitration of grievances arising out of or based upon the contracting out of transportation work.

''3. An order compelling Respondent to proceed with the arbitration of the grievance dated December 27, 1960, would have the effect of modifying or extending the terms and conditions of said Articles of Agreement dated April 10, 1960 [*sic*], which is specifically prohibited by the terms of said Articles of Agreement.''

Union to amend said agreement so as to restrict the Company's right to contract out all work, and have in fact amended the agreement so as to impose restrictions upon the Company's right to contract out only certain defined types of work and have knowingly rejected amendments which would have extended such restrictions to other types of work, may the Company be compelled to submit to arbitration its contracting out of such latter types of work, under an arbitration agreement which expressly excludes from arbitration, proposals to amend, modify or extend any of the terms or conditions of the agreement.''

A more accurate statement of the issue to be resolved is as follows:

Where the parties (Company and Union) have expressly and specifically agreed with reference to the subject matter of the Company contracting out work; and by the express terms of said agreement the restriction on contracting-out of work is limited solely to ''contract labor to perform upkeep and repair work normally performed by employees''; and where the grievance does not relate to ''contract labor to perform upkeep and repair work normally performed by employees'' but relates to the use of contract labor relative to transporting products; and where the arbitration clause (article 22) expressly provides that ''Under no circumstances may an arbitration decision in any manner nullify, amend, modify, extend, reduce or otherwise change any of the terms or conditions of this Agreement,'' did the trial court err in refusing to order the parties to submit the controversy to arbitration?

As stated by the Supreme Court in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co., infra* [*sic*], 363 U.S. 574, 582-585 [80 S.Ct. 1347, 4 L.Ed.2d 1409, at pages 1417-1419]:

''. . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

''.　　.　　.　　.　　.　　.　　.　　.　　.　　.　　.

''. . . Contracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators. A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not

a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. . . . In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. . . .''

The case at bar differs radically from the factual situation in the *Warrior* case. The agreement in the *Warrior* case did not contain a provision which mentioned contracting-out of work. Footnote 8 of the majority opinion (363 U.S. 584, 4 L.Ed.2d, p. 1418) provides as follows:

"8. See *Celanese Corp. of America*, 33 Lab Arb Rep 925, 941 (1959), where the arbiter in a grievance growing out of contracting out work said:

" 'In my research I have located 64 published decisions which have been concerned with this issue covering a wide range of factual situations but all of them with the common characteristic—i.e., *the contracting-out of work involved occurred under an Agreement that contained no provision that specifically mentioned contracting-out of work.' "* (Emphasis added.)

The parties in the case at bar *did* specifically mention contracting-out of work in their agreement. The fact that the parties did specifically deal with the problem of contracting-out of work and specifically restricted the Company with reference to contracting-out of work only insofar as "contract labor to perform upkeep and repair work normally performed by employees" constitutes forceful evidence of a purpose to exclude the claim [i.e., contracting-out of transportation work] from arbitration." (See: *Local No. 725, Intl. Union of Operating Engineers* v. *Standard Oil Co. of Ind.* (D.C. N.Dak.1960) 186 F.Supp. 895.)

"Arbitration is the means of solving the unforeseeable" —here there was no question as to the matter being unforeseeable, the Company and the Union had each foreseen the problem and had made a provision in the contract to provide for what could not be contracted-out. Pursuant to the law which is in effect under the circumstances, this court does not undertake to make any determination of the merits of the grievance. It seems perfectly clear however that the arbitration clause in this case is not susceptible to interpretation to have it cover the asserted dispute.

Schauer, J., concurred.