[Civ. No. 7479. Fourth Dist. Apr. 22, 1965.]

CLAUDE THOMPSON, Plaintiff and Appellant, v. ELLIOTT PRECISION BLOCK COMPANY, Defendant and Respondent.

Brundage, Hackler & Roseman and Julius Reich for Plaintiff and Appellant.

Robert J. Simpson for Defendant and Respondent.

CONLEY, J.*—This is an appeal from an order denying appellant's juridical request for an order directing arbitra-

*Assigned by the Chairman of the Judicial Council.

tion pursuant to section 1281.2 of the Code of Civil Procedure, which provides in part: ''On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, . . .''

The petitioner is a resident of the County of San Bernardino and an officer (secretary) and member of General Truck Drivers and Helpers Union, Local 467; he filed the petition in a representative capacity. The organization is hereafter referred to as ''the Union.'' Elliott Precision Block Co., herein called ''the Company,'' is a California corporation.

On or about December 14, 1961, the Union and the Company entered into a written collective bargaining agreement effective as of December 1, 1961; it contains a provision (§ XVI) which requires arbitration in case of a dispute over the interpretation of the contract, which reads in part as follows:

''. . . In case of dispute between the parties of this Agreement over the interpretation of this contract, a reasonable effort will be made by the Employer and representative of the Union to straighten out the dispute. If, after 7 days, the employer and representative fail to reach a satisfactory agreement, a committee of three people shall be appointed to represent the employer and a like committee from the Union. If this committee fails to reach a satisfactory conclusion within 7 days, a seventh disinterested party, agreeable to both sides, shall be selected, and a decision of the majority of the whole shall be final and binding upon both parties. Should the Employer and the Union fail to agree upon the selection of the seventh disinterested party to serve on the committee, a request to the Federal Conciliation office for a list of persons to serve will be made.''

A previous collective bargaining agreement terminated on or about October 1, 1961. The Union asks arbitration of its claim that the Company has violated the contract by refusing to rehire one of its members, Robert Gierman, in proper order of seniority. Gierman was formerly employed by the Company, but ceased work, without being discharged, on October 23, 1961; since that time the Company has refused to reemploy him, although as the Union points out the agreement provides that ''Company seniority shall prevail in the permanent lay off and re-employment of all drivers.''

The petition for arbitration was filed in timely fashion

and in accordance with the requirements of the agreement; it is conceded that there was no waiver by the Union of any existent right to compel arbitration, and it is admitted that the Company refused to commit the dispute to arbitration. Thus, there is in reality a single issue presented: when the parties are in disagreement over the interpretation of a contract, and the instrument contains an agreement to arbitrate disputes, does such agreement compel arbitration at the instance of either party?

The right of the appellate court to rule on this question is specifically given by section 1294 of the Code of Civil Procedure in which it is said that an appellate court may review "an order . . . denying a petition to compel arbitration."

The question involved here is answered in the affirmative by recent decisions of the Supreme Court of this state. In *Brink* v. *Allegro Builders, Inc.,* 58 Cal.2d 577, 579 [25 Cal.Rptr. 556, 375 P.2d 436], it is said: "Where the parties have agreed that all questions as to rights and obligations under an agreement are subject to arbitration, . . . all disputes pertaining to the meaning, interpretation and application of any clause in the agreement, even those that prima facie appear to be without merit, are the subject of arbitration."

Later, the opinion states (p. 580) : "The statutory procedure to compel arbitration by court order was designed to afford a remedy where the parties have not provided for the contingency that has arisen or where the contractual scheme has failed."

The leading case of *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169 [49 Cal.Rptr. 297, 363 P.2d 313], held that the so-called "Cutler-Hammer" doctrine, originating in New York, which makes it permissible by the court in an applicable case to deny arbitration if the meaning of a portion of the contract to be arbitrated is beyond dispute, has never been unequivocally adopted in this state, and that, although the federal rule which was enunciated in "the Steelworkers trilogy" (*United Steelworkers of America* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424], *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409], and *United Steelworkers of America* v. *American Mfg. Co.,* 363 U.S. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403]) is not binding on our Supreme Court ". . . there are strong policy reasons why the federal rule is preferable," in California. In the opinion, it is further said in summarization, at page 181: "Thus, this court has

agreed, in general, with the federal courts as to the purpose and scope of arbitration agreements as they relate to labor controversies. While this court has neither unequivocally adopted the 'Cutler-Hammer' doctrine nor the federal rule, there is language in several cases favoring what is now the federal rule.''

The court also said (pp. 183-184): ''From the above analysis, it can be safely stated that it is a fundamental part of both federal and California public policy to promote industrial stabilization through the medium of collective bargaining agreements. Certainly, it can be said that, in the instant case, both parties intended to secure, if possible, industrial stabilization. To obtain this end the parties expressed their intent to include within the arbitration clauses of the agreement all clauses of the contract, and all disputes arising under the agreement. The action of Grunwald-Marx, Inc., in first proceeding to arbitrate is some evidence in support of the inference that it intended the vacation pay and holiday pay provisions to be arbitrable in the event of removal of its plants and 'termination' of its employees. This being so, the federal rule to the effect that in such cases all disputes as to the meaning, interpretation and application of any clause of the collective bargaining agreement, even those that prima facie appear to be without merit, are the subject of arbitration, is adopted by this court.'' (See also *O'Malley* v. *Wilshire Oil Co.*, 59 Cal.2d 482 [30 Cal.Rptr. 452, 381 P.2d 188]; *Local 156, United Packinghouse, Food & Allied Workers* v. *Du Quoin Packing Co.*, 337 F.2d 419.)

The fact that Mr. Gierman has not served as an actual employee during the life of the present contract between the Union and the Company is irrelevant; he is a member of the Union and the latter organization properly believes that his rights as such and as a former employee are involved. It would seem apparent also that while Mr. Gierman's status is the immediate object of the inquiry, the provision in question may well be invoked in future similar situations. The increased use of arbitration in labor controversies is a signpost of the times. It has a tendency, unquestionably, to promote peace between contending factions in industry and its use should be encouraged. We believe that the trial court erred in failing to require arbitration.

The order is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.