[Civ. No. 32568.   Second Dist., Div. Five.   Mar. 25, 1969.]

ARGO CONSTRUCTION CO., INC., Plaintiff and Respondent, v. COUNTY OF LOS ANGELES, Defendant and Appellant.

John D. Maharg, County Counsel, and Martin E. Weeks, Deputy County Counsel, for Defendant and Appellant.

Grant & Popovich and Irvin Grant for Plaintiff and Respondent.

KAUS, P. J.—On May 19, 1965, the Argo Construction Co., Inc., (''Argo'') made a contract with the County of Los Angeles under which it was to construct a certain building. Partitions were to be in accordance with certain specifications which were incorporated into the contract by reference. An addendum to the contract provided as follows: '' ' (1) Weber Showcase and Fixture Co., Inc. ''Consept'' [*sic*] partitions are used as a standard of construction and quality. Minor variations in construction and dimensions are permissible. Partitions by E. F. Hauserman or Mills will also be acceptable, upon approval of shop drawings.' ''

During the construction Argo submitted as allegedly complying with the contract certain partitions designated as: ''Virginia Metal Products Mobilwall Jr.'' Data submitted by Argo showed that the substitute partitions varied from the specifications in certain particulars. The county did not permit the installation of the Virginia partitions. Under protest Argo then installed the Hauserman partitions referred to in the addendum.

Paragraph 19 of the contract between Argo and the county provides that in the event the parties ''are unable to agree with respect to any factual determination'' under the terms of the contract, it is to be submitted to arbitration. Argo then petitioned the superior court for an order to compel arbitration, claiming in essence that it was caused unnecessary expense by the county's refusal to allow it to install the Virginia partitions.

The court ordered arbitration to proceed, reserving jurisdiction to define the issues to be arbitrated if the parties were unable to do so. The parties were unable and, after further proceedings, the court defined the issues as follows:

''1. Did Argo Construction Co., Inc. properly present the Virginia Metal Products Mobilwall Jr. movable partition for use on this project to the County of Los Angeles under the terms of the contract documents?

''2. If the arbitrators determine that the answer to issue No. 1 above is in the negative, did the County of Los Angeles waiver [*sic*] strict compliance with the provisions of the contract documents relating to the submission of the Virginia

Metal Products Mobilwall, Jr. movable metal partitions for use on the project.

"3. If the arbitrators determine that the answer to either issue No. 1 or No. 2 above is in the affirmative, did the Virginia Metal Products Mobilwall Jr. movable metal partitions proposed to be used by Argo Construction Co., Inc. meet the standard of construction and quality of the Weber Showcase and Fixture Co., Inc., 'consept' [sic] partitions subject to minor variations in construction and dimensions?

"4. If the arbitrators determine that the answer to issue No. 3 above is in the affirmative, what was the amount of damage suffered by Argo Construction Co., Inc. by reason of the refusal of the County of Los Angeles to permit the use of the Virginia Metal Products Mobilwall Jr. movable metal partitions."

Arbitration was had. The arbitrators decided the issues as follows: issue 1—no; issue 2—yes; issue 3—yes; and issue 4—$2,300. The court thereafter confirmed the award, signed the findings of fact and conclusions of law, awarded Argo attorneys' fees and costs and entered judgment. The county appeals, raising three issues.

I.

The first is that the superior court erred in submitting the matter to arbitration without making findings of fact and conclusions of law. The point has no merit. Section 1291 of the Code of Civil Procedure requires findings only "whenever an order or judgment . . . is made that is appealable under this title." Appealable orders are listed in section 1294. An order to arbitrate is not one of them.

II.

The county claims that the court erred in not submitting to arbitration the question whether the Virginia partitions met the specifications. Apparently it is conceded that the finding of the arbitrators that they met the "standard of construction and quality" of the Weber, Hauserman and Mills partitions is not subject to attack.

The trial court apparently decided that the addendum modified the specifications, to the extent that the Hauserman and Mills partitions differed from the Weber partitions. When the contract was first drawn up, the clause in question read as follows: "Furnish and install 'Concept' movable metal par-

tition manufactured by Weber Showcase & Fixture Co., Inc., *complete as indicated on the plans and specified hereunder.* Products as manufactured by E. F. Hauserman Company and Mills may be bid providing they meet all requirements as specified hereunder.'' (Italics added.)

The change in emphasis and the omission of any reference to the plans and specifications makes the trial court's interpretation the only reasonable one. In fact it seems probable that the modification was required by the provisions of section 4380 of the Government Code prohibiting, with some exceptions not here applicable, specifications in public construction contracts which ''limit the bidding, directly or indirectly, to any one specific concern'' or call for a designated product by trade name unless the specification lists at least two trade names of comprable quality and is followed by the words ''or equal.'' The papers filed below and the arguments made to us by the county leave us somewhat in the dark about the reason for its dissatisfaction with Virginia partitions, but apparently it is purely aesthetic. The county says that the Virginia partitions did not have single line joints and did not extend all the way to the floor with continuous thickness. Actually there is nothing in the specifications which specifically says anything about the partitions extending all the way to the floor with continuous thickness, although it seems probable that an engineer can read that requirement into the technical language of the specifications.[1] The squabble seems to be over the fact that Virginia partitions, instead of solidly extending to the floor, came with a 6-inch base which covered the gap to the floor. We are reinforced in our belief that this is an argument over aesthetics by the fact that the county supports its point merely by citing cases to the effect that it, just as any other owner, is entitled to insist that the construction satisfy its

[1] ''*Panel units*: Panel units shall be not less than $2\frac{1}{4}$'' nor more than 3'' thick, insulated with mineral wool, factory assembled. Process-leveled, 20 ga. steel panel plates shall have vertical edges precision roll-formed, to provide for interlocking with 16 ga. vertical members and to maintain close dimensional tolerance. Panel faces shall be reinforced with horizontal steel stiffeners attached with a double row of spotwelds staggered 3'' o.c. These reinforcements to be placed approximately 13'' o.c. throughout the height of the panel. Panel stiffeners shall be staggered to eliminate voids in the installation.

''. . . *Base*: Shall be 3'' high recessed base continuous under partition. $2\frac{3}{8}$'' recessed base trim, adjustable to normal floor variations, shall be easily removable from either side to allow for lay-in conduit. Inner floor channel shall be 18 ga. steel and provide continuous light and sound seal at floor contact.''

aesthetic requirements. The trouble with that position is that the modification merely required the substitute partitions to conform to the "standard of construction and quality" exemplified by the Weber brand. Furthermore, if aesthetics were permitted to rule the choice, section 4380 of the Government Code would in most cases be a dead letter.

### III.

The county contends that the first two issues submitted to the arbitrators were not "factual" and that arbitration was therefore not called for under the terms of paragraph 19. The point assumes significance because on issue 1 the finding of the arbitrators was against Argo. If therefore it can be said that issue 2, the question of waiver, was not a factual issue, the award should not have been confirmed.

We are somewhat in the dark with respect to the facts involved in connection with issues 1 and 2. We gather from the record that the county claimed that somewhere along the line Argo did not follow the procedural provisions of the contract with respect to submitting the Virginia partitions as substitutes.

Neither side has produced a case interpreting an arbitration clause with respect to "factual" disagreements only. Argo refers us to several cases holding that the function of determining whether or not there has been a waiver is essentially one for a trial, rather than an appellate court. (Eg. *Hefferan* v. *Freebairn,* 34 Cal.2d 715, 722 [214 P.2d 386].) Waiver is, of course, a mixed question of law and fact which normally is submitted to a jury under appropriate instructions defining the legal concept of waiver, but the fact that a jury, properly instructed on the law, is usually called upon to determine what we call "facts," does not necessarily answer our problem. There are evidentiary facts and so-called ultimate facts which look suspiciously like legal conclusions. Negligence is a good example. It could be argued that the arbitration clause in question here did not contemplate the determination of such ultimate facts, but that the parties intended to submit to arbitration nothing but the resolution of disputes concerning so-called historical facts. Having in mind, however, the circumstance that the arbitration clause in question was drawn by the county, that " [a] heavy presumption weighs the scales in favor of arbitrability" and that " [d]oubts should be resolved in favor of coverage" (*O'Malley* v. *Wilshire Oil*

IV.

*Co.*, 59 Cal.2d 482, 491 [30 Cal.Rptr. 452, 381 P.2d 188]), we have come to the conclusion that the purpose of the arbitration agreement was to submit to arbitration disputes which would normally be decided by a jury, leaving only purely legal questions, calling for no determination of fact, to the courts.

The superior court awarded Argo costs and attorneys' fees. The county makes no complaint on that score, but Argo now wants attorneys' fees on appeal. The question whether such fees are allowable and the amount thereof may more properly be decided by the superior court. (*Oakland Cal. Towel Co.* v. *Roland,* 93 Cal.App.2d 713, 718-719 [209 P.2d 854].)

The judgment is affirmed. Any motion for counsel fees on appeal may be filed within thirty days from the date of the filing of the remittitur.

Stephens, J., and Reppy J., concurred.