[Civ. No. 32350. First Dist., Div. Four. July 3, 1974.]

SANTA CLARA-SAN BENITO CHAPTER OF THE NATIONAL
ELECTRICAL CONTRACTORS' ASSOCIATION, INC.,
Plaintiff and Appellant, v.
LOCAL UNION NO. 332 OF THE INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS et al.,
Defendants and Respondents.

432

**COUNSEL**

Rea, Frasse, Anastasi, Clark, Lewis, Glennon, Filice & Whitcanack and Anthony J. Anastasi for Plaintiff and Appellant.

Wylie, Leahy, Blunt & McBride, David W. Leahy and Brundage, Neyhart, Miller, Ross & Reich for Defendants and Respondents.

## OPINION

**CHRISTIAN, J.**—Appellant Santa Clara-San Benito Chapter of the National Electrical Contractors' Association, Inc. sought a judgment construing and enforcing a collective bargaining agreement with Local Union No. 332 of the International Brotherhood of Electrical Workers. The local union responded with a request for confirmation of an arbitration award. The court confirmed the arbitration award and gave judgment to respondents on the basis that the issues tendered by appellant had been conclusively determined in the arbitration. The present appeal followed. We affirm the judgment.

Appellant is the collective bargaining agent for the electrical contractors in Santa Clara and San Benito Counties. It has been negotiating collective bargaining agreements with the local union since 1954. The constitution of the International Brotherhood of Electrical Workers provides that any agreement entered into by a local union shall be "null and void" until approved by the international union. Appellant and the local were aware of that requirement. Appellant and the local entered into a new collective bargaining agreement, effective June 22, 1967, that was to remain in effect until May 31, 1969, and to continue in effect from year to year until terminated. The agreement provided that it could be amended at any time by mutual consent of the parties subject to the approval of the international headquarters of the union. If any proposed amendment was changed or altered by the international "so as to alter the intent of any section, other than editorial or legal changes," it was to be referred back to the contracting parties for further negotiation. The agreement contained a no-strike clause and a provision that "All questions, disputes or controversies under [the agreement were to] be settled and determined solely and exclusively by the conciliation and arbitration procedures provided in [the] Agreement."

After the contract had been amended several times the international union advised the local that the next negotiations with appellant should result in a new agreement instead of additional amendments. Extensive negotiations produced a new draft which was ratified by the members of the local, executed by the local and appellant, and forwarded to the international union for approval.

The new agreement, effective from June 1, 1969, until May 31, 1971, and from year to year thereafter unless modified or terminated, resembled the 1967 agreement in that it provided for amendment by consent of the parties, subject to the approval of the international union. The agreement

also contained no-strike and arbitration clauses. Unlike the 1967 agreement, which provided for further negotiations if the international changed the intent of the amendment agreed to by appellant and the local, the 1969 agreement provided that unresolved issues in negotiation could be submitted either jointly or unilaterally for arbitration.

When the 1969 agreement was submitted the international modified ("red-lined") several provisions and approved it as modified. Negotiators designated by appellant and the local adopted in substance all but one of the modifications proposed by the international. The disputed modification affected travel pay. Since 1964 it had been provided that a worker was to be paid at his usual hourly rate for driving his employer's vehicle to or from the job site before or after the regular work day. Claiming that the change was necessary to conform to federal law, the international altered article III, section 15-C, to provide extra-time travel pay at one and one-half times the usual hourly wage.

Appellant refused to accept the alteration, contending that the provision as originally drafted was lawful. However, appellant did not reject the new contract as a whole; the contract went into effect and there was no work stoppage as might have occurred had the contract been rejected. On July 16, 1970, appellant informed the local that it considered the 1969 negotiations closed and that it desired the international to withdraw its change to section 15-C unless it could show illegality. The union then unilaterally submitted the dispute to arbitration. Appellant and the local both submitted briefs to the arbitrators arguing the merits of the dispute. The arbitrators decided that section 15-C should be altered to provide for travel pay of one and one-half times the regular rate of pay as required by the international union, effective November 18, 1970.

Appellant points out that it did not join in the local's submission of the dispute to arbitration, and contends that it was not a party to the arbitration; consequently, it is argued, respondents' counterclaim to confirm the arbitration award should not have prevailed. Section 1287.2 of the Code of Civil Procedure provides that a proceeding to confirm an arbitration award shall be dismissed if the party against whom the award is sought to be enforced "was not bound by the arbitration award and was not a party to the arbitration." The phrase "party to the arbitration" is defined, inter alia, as "a party to the arbitration agreement . . . [a]gainst whom such arbitration is sought pursuant to the agreement; . . ." (Code Civ. Proc., § 1280, subd. (e)(2).) ■ Appellant was a party to the 1969 collective bargaining agreement, which contained a provision for unilateral reference

to arbitration. The local sought to enforce the award against appellant. Therefore, appellant was a "party to the arbitration" as defined in the code.

The central issue presented in this case is whether the dispute over the language to be included in article III, section 15-C; in the 1969 collective bargaining agreement, is an arbitrable dispute. The trial court determined that the 1969 collective bargaining agreement executed by appellant and the local in October 1969 was binding upon the two parties. Appellant asserts the contrary, and contends that the 1967 agreement remained applicable, pointing out that approval by the international of the new agreement was a condition precedent to the contract and that the local did not actually accept appellant's offer but in effect made a counteroffer based on the international's changes. Mutual assent or consent is required to create a contract; the agreement is usually shown by manifestations and expressions of consent such as signatures to the contract. (*Zurich etc. Assur. Co.* v. *Indus. Acc. Com.* (1933) 132 Cal.App. 101, 103-104 [22 P.2d 572].) ■ When, as in the present situation, two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens neither party is bound by the agreement. (*Helperin* v. *Guzzardi* (1951) 108 Cal.App.2d 125, 128 [238 P.2d 141].) The negotiations proceeded in the light of the knowledge of both parties that any contract made by the local was ineffective until approved by the international union. The 1969 collective bargaining agreement nevertheless came into force through the actions of the parties. When it was returned by the international union with material changes, appellant was free to reject the counteroffer and take its chances with further negotiations or with a strike or lockout. Instead, appellant declared that it considered the negotiations completed and requested that the travel pay provision proposed by the international union be withdrawn. Appellant and the local union then continued work in due course, treating the 1969 contract as being in effect. This conduct by the parties constituted a new counteroffer by appellant and an acceptance thereof by the local. The action of the local in this regard met with acquiescence and implied approval on the part of the international union. The disputed travel pay provision was thus left for future resolution.

■ The contract provides generally for arbitration of "unresolved issues in negotiations" and specifically that "All questions, disputes or controversies under this agreement shall be settled and determined solely and exclusively by the conciliation and arbitration procedures provided in this

agreement." We conclude that under the contract the travel pay issue was arbitrable.

█ A court may vacate an arbitration award if the arbitrators exceeded their powers. (Code Civ. Proc., § 1286.2, subd. (d).) It may dismiss a petition for confirmation of an award if a party is not bound by the award and not a party to the arbitration. (*Id.*, § 1287.2.) A court may also determine whether the parties agreed to arbitrate a matter. (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 491 [30 Cal.Rptr. 452, 381 P.2d 188].) █ Otherwise courts may not interfere with arbitration awards. Courts may not examine the merits of the controversy, the sufficiency of the evidence supporting the award, or the reasoning supporting the decision. (*Case* v. *Alperson* (1960) 181 Cal.App.2d 757, 761 [5 Cal.Rptr. 635].) A court may not set aside an arbitration award even if the arbitrator made an error in law or fact. (*State Farm Mut. Auto. Ins. Co.* v. *Guleserian* (1972) 28 Cal.App.3d 397, 402-403 [104 Cal.Rptr. 683]; *Interinsurance Exch.* v. *Bailes* (1963) 219 Cal.App.2d 830, 834-836 [33 Cal.Rptr. 533].)

█ Courts maintain a "heavy presumption" in favor of arbitrability; arbitration is proper under a general arbitration clause in a collective bargaining agreement " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " (*O'Malley* v. *Wilshire Oil Co., supra,* 59 Cal.2d 482, 491, quoting *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347].)

Appellant argues that the dispute over article III, section 15-C, in the 1969 collective bargaining agreement is a matter for collective bargaining; it claims the dispute is not arbitrable because it did not arise "under the agreement" as required by the arbitration clause. █ That contention might have been sound if advanced before the 1969 contract took effect. But under that contract the grievance concerning overtime pay is within the purview of the arbitration clause which provided for arbitration of "[a]ll questions, disputes or controversies under the agreement." The matter was a dispute between the parties to the agreement. (See *Weiman* v. *Superior Court* (1959) 51 Cal.2d 710, 712-713 [336 P.2d 489].) The fact that the issue presented for arbitration apparently arose out of a legal question—whether the original language of section 15-C violated federal law—is immaterial; arbitrators frequently decide legal questions. (See, e.g., *B. S. B. Constr. Co.* v. *Rex Constr. Co.* (1962) 200 Cal.App.2d 327, 334 [19 Cal.Rptr. 167]; cf. Code Civ. Proc., § 1280, subd. (c) ["controversy"

is defined as "any . . . question . . . of law or of fact or both"]. But see *Alpha Beta Mkts.* v. *Amal. Meat Cutters* (1956) 147 Cal.App.2d 343, 350 [305 P.2d 163].)

Underlying much of appellant's argument is the attitude that respondents did not act fairly in the collective bargaining that resulted in the 1969 agreement. Appellant asserts that respondents refused to bargain in good faith, conduct which is an unfair labor practice under the Taft-Hartley Act. (29 U.S.C. § 158, subd. (b)(3), subd. (d).) But the record does not establish that the contract is governed by federal law. ▮ If so, the court would in any event be required to defer to the exclusive competence of the National Labor Relations Board. (*Musicians Union, Local No. 6* v. *Superior Court* (1968) 69 Cal.2d 695, 706 [73 Cal.Rptr. 201, 447 P.2d 313], citing *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773].) State courts may not decide whether the conduct governed by the Taft-Hartley Act is an unfair labor practice.

Affirmed.

Caldecott, P. J., and Rattigan, J., concurred.