[Civ. No. 49667. First Dist., Div. Three. June 26, 1981.]

OAKLAND UNIFIED SCHOOL DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
OAKLAND EDUCATION ASSOCIATION, CTA/NEA, Real Party
in Interest.

1008

**COUNSEL**

Michael S. Sorgen, Sandra Woliver, Yvonne Garcia and Ember Lee Shinn for Petitioner.

Barry Winograd for Respondent.

Kristen L. Zerger, Raymond L. Hansen and Diane Ross for Real Party in Interest.

**OPINION**

SCOTT, J.—The Oakland Education Association (Association) complained that petitioner Oakland Unified School District (District) had committed an unfair practice when it unilaterally terminated Blue Cross as the administrator of employee medical claims and substituted Western Administration Company as the district's medical claims processor. The Association contended that the change of administrators was a meet and confer item requiring collective bargaining negotiations. In particular they contend that the change in claims processor resulted in the loss of the Blue Cross identification card which is nationally recognized and provides guaranteed payment for admission to any of Blue Cross' 7,000 member hospitals and in the loss of the right on termination from employment with the District to convert to Blue Cross Health Insurance. Neither of those benefits were available to members of the Association with Western Administration administering the self-insured health plan of the District. A hearing officer found in favor of the Association. Upon review the Public Employment Relations Board (PERB) affirmed the hearing officer's findings and ordered certain remedies. In its petition for a writ of review of the PERB order the District contends that PERB erred in finding that the District erred in unilaterally changing its medical plan administrator and further contends that the remedies ordered constitute an abuse of discretion. We issued a writ of review upon application of the District. We conclude that the board's decision should be affirmed.

Until 1975 Blue Cross was the carrier for the District's employees health claims. In 1975 the District became self-insured and contracted with Blue Cross to administer the self-insured employees health plan. The benefits flowing to the employee were exactly the same. This change came about without negotiations with the Association. In fact it appears that the Association members were not aware of the change until 1977 when the Association members were advised that Western Administration Company was replacing Blue Cross as the new administrator of the health plan. The Association's president requested to negotiate with the Board concerning the change of administrators. However, the District refused to negotiate contending that the subject was beyond the scope of negotiation.

## I. MOOTNESS

The petitioner initially contends that the unfair practices charge is moot because after the hearing on the Association's charges a collective bargaining agreement was entered into by the parties and that the agreement constituted a waiver of the previous unfair practices charge. Petitioner concedes that the identity of a claims administrator was never negotiated nor was it included expressly in the 1978 agreement. ██ The board concluded that the present issue had not been mooted by the subsequent agreement. We agree. The mere fact that the parties entered into a collective bargaining agreement subsequent to the hearing order in this case certainly does not lead to a conclusion that the parties intended in that agreement to resolve this dispute.

The facts indicate that throughout the negotiations between the District and the Association the District firmly resisted negotiations on the subject of the health plan administrator change and the Association's contention that related benefits would be affected. The District now makes the incongruous argument that the 1978 collective bargaining agreement resolved the health plan administrator issue. This argument is made despite the fact that the District had never in fact negotiated the issue and despite the fact that the contract was silent on the issue. Petitioner goes on to argue that the complete absence of any bargaining and the refusal to even discuss the issue should be construed as a waiver by the Association of its right to a determination by the board on the subject of the unfair practices charge. We miss the logic of this argument.

Courts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based. In the area of labor relations, the statutory right to press unfair practice claims is preserved where a subsequent contract is silent on an issue previously in dispute (*Timken Roller Bearing Company* v. *N. L. R. B.* (6th Cir. 1963) 325 F.2d 746 [2 A.L.R.3d 868], relying on *National Labor Relations Board* v. *J. H. Allison Co.* (6th Cir. 1948) 165 F.2d 766 [3 A.L.R.2d 990]. ■ This rule is premised on the fact that silence in a bargaining agreement with respect to an issue previously in dispute does not meet the. test of "clear and unmistakable" language of relinquishment of that issue (*Timken, supra*, 325 F.2d at p. 751).

Petitioner relies upon a clause of the 1978 agreement in support of its waiver contention. The provision known as a "zipper" clause provides "[t]his agreement fully and completely incorporates the understanding of the parties hereto, constitutes the entire agreement between the parties, and supersedes all previous agreements, understandings and prior practices related to matters included within this Agreement." This language hardly provides the "clear and unmistakable" language of relinquishment referred to in *Timken, supra.* It is apparent that there was no language in the 1978 agreement that remotely suggests a waiver of the unfair practice charge which is the subject matter of this petition, much less any clear and unmistakable language.

## II. Unilateral Action of District

■ The central issue in this case is whether the District's unilateral action in changing its health plan administrator was a matter within the scope of representation under Government Code section 3543.2. This section provides: "The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. 'Terms and conditions of employment' mean *health and welfare benefits* as defined by Section 53200[1] .. . ." (Italics added).

It is undisputed that insurance benefits are within the scope of representation under Government Code section 3543.2. Petitioner argues,

---

[1]Government Code section 53200, subdivision (d), provides: "'Health and welfare benefit' means any one or more of the following: hospital, medical, surgical, disability, legal expense or related benefits including, but not limited to, medical, dental, life, legal expense, and income protection insurance or benefits, whether provided on an insurance or a service basis, and includes group life insurance as defined in subdivision (b) of this section."

however, that its change in administrators was not negotiable since the change did not affect the benefits available to employees. Both the hearing officer and the board, however, found that the change in the District's administrator was linked to a change in certain employee benefits. Therefore, they concluded, the subject of the change was negotiable.

The question is whether the change in administrators had a "material and significant effect or impact upon the terms and conditions of employment." (See *Keystone Steel & Wire, etc.* v. *N. L. R. B.* (7th Cir. 1979) 606 F.2d 171, 179.)

Initially we observe that the relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference (*Ford Motor Co.* v. *NLRB* (1979) 441 U.S. 488, 495 [60 L.Ed.2d 420, 426-427, 99 S.Ct. 1842]). The Supreme Court stated in *Ford* that the delegation of those duties to agencies such as the NLRB was the intent of Congress, and thus deference to their findings is entirely appropriate since they are "tasks lying at the heart of the Board's function" (*id.*, at p. 497 [60 L.Ed.2d at p. 428]). The court noted that the board's view should be accepted if it is "not an unreasonable or unprincipled construction of the statute" (*id.*). Even though the board's judgment is "subject to judicial review ... if its construction of the statute is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute" (*id.*).

### A. Conversion Privileges

The conversion privileges insured continuity of coverage and eliminated any question that an employee would be found uninsurable. The Blue Cross plan provided in writing "a member who terminates employment and thereby leaves the group may continue Blue Cross protection by applying for a Blue Cross Group Conversion Program." No such written conversion privilege attached to the contract with Western Administration Company. The District makes two arguments regarding this benefit. The first argument is that there is no loss of the benefit because the District has agreed to continue medical coverage for terminated employees pending an agreement for conversion with some other health plan carrier. They point out that no terminated employee has yet been denied some continuity of coverage. At oral argument,

however, the District indicated that no conversion carrier had been identified as yet but in any event this commitment was more from their largess rather than a legal obligation. The second argument upon which they appear to more heavily rely is that this benefit was not one negotiated by the Association and could have been terminated at any time by Blue Cross without violating its administration contract with the District. The District then concludes that this benefit never having been a right of the Association members, its loss was illusory. The board was not persuaded by this argument; nor are we. The fact is that the conversion right existed and the further fact is that it was not Blue Cross that terminated the right, it was the District who did so by their unilateral act. Another question would be raised had Blue Cross revoked the conversion privilege, a question which was not before the board or us.

## B. Blue Cross Card

The Blue Cross card provides guaranteed admission to any one of Blue Cross' 7,000 member hospitals in areas of the country outside of northern California, with inpatient services being billed directly to the Blue Cross plan rather than to the patient. The identification cards are part of the Blue Cross interplan bank system which facilitates the admission of any card holder. The system also assures payment by the health plan so that the patient possessing a Blue Cross card need never be concerned that she/he will be billed and required to pay for services and then have to seek reimbursement from the plan. Western Administration Company is part of no similar system outside of northern California. With the change from Blue Cross to Western Administration Company, employees of the District were issued a card by the District; however that card does not provide the same assurance that admission to a hospital outside of northern California will be quick and relatively problem free. Since teachers often travel outside of northern California during the summer months, and since a hospital admission during such vacation travel is likely to be of an emergency nature, this is an affected benefit which assumes greater importance to the certificated teachers.

Petitioner contends that the record contains extensive testimony to the effect that the identity of the claims processor has no impact on hospital admissions. Yet only one individual, Clifford Wiesner, vice president of Western Administration Company, testified that from his experience, he knows of no instances where admission to a hospital was denied upon a patient's showing his/her identification card. When the

hearing officer questioned Wiesner, however, the vice president was unable to state that a patient who was in New York and visited a doctor's office would not be billed by the doctor and have to seek reimbursement from the Western Administration Company plan. With Blue Cross, on the other hand, there is no question that an out-of-state doctor's office would simply bill Blue Cross for services rendered. Thus, the loss of the Blue Cross card is an important benefit affected by the District's unilateral change of administrators.

We conclude that there is substantial evidence to support the board's conclusion that while the change in administrators did not affect the coverage provided by the District's self-insurance plan, Blue Cross administration resulted in certain benefits which were lost when the District switched to Western Administration Company. These lost benefits had a material impact on the terms and conditions of employment of the Association members. Since these benefits are linked to the identity of the administrator, the District's change in administrators should have been negotiated pursuant to section 3543.2. Therefore, the District, in refusing to negotiate this issue with OEA, violated Government Code section 3543.5, subdivisions (a), (b) and (c).

III. THE REMEDY

It appears that the board fashioned an appropriate remedy for the District's unlawful conduct. Government Code section 3541.5, subdivision (c), gives PERB broad powers to remedy unfair practices. It provides: "The board shall have the power to issue a decision and order directing an offending party to cease and desist from the unfair practice and to take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as will effectuate the policies of this chapter."

Since the District was found to violate Government Code section 3543.5, subdivisions (a), (b) and (c), by unilaterally terminating Blue Cross as its administrator, a proper remedy would be to order the District to return to the status quo by reinstating Blue Cross. This is a common and accepted remedial approach in unilateral change cases (see, e.g. *Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203 [13 L.Ed.2d 233, 85 S.Ct. 398, 6 A.L.R.3d 1130] [order reinstating bargaining unit work subcontracted by the employer]; *Office and Professional Emp. Int. U., Local 425* v. *N. L. R. B.* (D.C. Cir. 1969) 419 F.2d 314 [restoration of job classification changes]).

Here, however, the board provided alternatives to reinstatement so that the District would not have to disrupt its contract with Western Administration Company. It ordered the District 1) to reinstate Blue Cross as administrator, *or* 2) to negotiate with Western Administration Company a modification in their existing agreement to provide the benefits lost, *or* 3) to negotiate a different settlement with OEA, reduce it to writing, and submit it to the regional director as proof of compliance with the order.

In addition the board ordered the District to reimburse employees' expenses incurred as a result of the change in administrators and to give employees written notice of the board's action. The remedy ordered appears to be even handed and temperate. We find no abuse of discretion.

The order of the board is affirmed.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied July 24, 1981, and petitioner's application for a hearing by the Supreme Court was denied September 16, 1981.