[Civ. No. 22469. Third Dist. Aug. 30, 1983.]

INDEPENDENT UNION OF PUBLIC SERVICE EMPLOYEES, Plaintiff and Respondent, v. COUNTY OF SACRAMENTO, Defendant and Appellant.

COUNSEL

L. B. Elam, County Counsel, and Melvyn W. Price, Deputy County Counsel, for Defendant and Appellant.

Richard J. Chiurazzi for Plaintiff and Respondent.

OPINION

CARR, J.—In this appeal we consider whether the County of Sacramento (County) was required to "meet and confer" with plaintiff Independent Union of Public Service Employees (hereinafter referred to as petitioner) prior to changing the working hours of county custodial workers. (Gov. Code, § 3505.)[1] We conclude the trial court correctly found the meet and confer requirement contained in the Meyers-Milias-Brown Act (MMBA) applicable and shall therefore affirm.

---

[1]All further statutory references are to the Government Code unless otherwise noted.

## FACTS

Petitioner is the certified bargaining agent for the county employees in the operations and maintenance unit, which includes the custodial workers. On July 14, 1981, petitioner and the County entered into a collective bargaining agreement covering all employees in the operations and maintenance unit. On July 15, 1981, the County posted a notice informing the custodial workers that their shift was being changed from 5 p.m. to 1 a.m. to 1 p.m. to 9 p.m. effective August 23, 1981. The reason for the shift change was energy conservation. On August 10, 1981, petitioner's business manager made a demand upon the County to meet and confer on the proposed shift change. The County refused, asserting the recently signed labor agreement gave it the power to unilaterally reassign its employees. A second exchange of letters to the same effect took place on August 20 and 24, 1981, with the County indicating a willingness to meet with individual employees if problems arose. The shift change became effective as scheduled.

On October 7, 1981, petitioner sought mandate to compel the County to meet and confer with respect to the shift change. The County both demurred to and answered the petition. Following briefing and the taking of testimony, the trial court rendered a statement of decision finding the MMBA applicable and ordering issuance of the writ as prayed. The County appeals from the ensuing judgment.

## DISCUSSION

### 1. *The MMBA*

The purpose of the MMBA is "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500.) Public employees are permitted to form organizations for the purpose of representation on all matters of employer-employee relations. (§ 3502.) The public agency is directed to "meet and confer" in good faith with representatives of recognized employee organizations on matters of wages, hours, and other terms and conditions of employment prior to taking action on the matter. (§ 3505.) "Meet and confer" means the public agency and the employee organization have a "mutual obligation personally to meet and confer promptly upon request by either party" for the purpose of exchanging information and endeavoring to reach agreement. (§ 3505.) ■ The meet and confer process does not bind the public agency to any particular result in the matter, but does require that the parties

seriously attempt to resolve differences and reach a common ground. (*Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55, 61-62 [151 Cal.Rptr. 547, 588 P.2d 249].) Should agreement be reached between the parties on employment matters, they may jointly prepare a memorandum of understanding (MOU), which, upon approval by the public entity, becomes binding. (§ 3505.1; *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 336 [124 Cal.Rptr. 513, 540 P.2d 609]; *Service Employees International Union* v. *County of Napa* (1979) 99 Cal.App.3d 946, 956 [160 Cal.Rptr. 810].) As the labor agreement in the present case was ratified by both parties, they agree it is a binding MOU within the meaning of the MMBA.

## 2. *The "County Rights" provision*

The County does not contest that the shift change was a matter "regarding wages, *hours,* and other terms and conditions of employment" within the meaning of section 3505 (italics added), but does contend petitioner specifically waived its right to meet and confer on this matter in the MOU. The County relies on article III of the MOU, entitled "county rights." Subdivision (b) of this provision states "[t]he rights of the County include, . . . the exclusive right to . . . train, direct and *assign* its employees; . . ." (Italics added.) ■■■ The County urges that by this provision it retained the right to unilaterally assign its employees to any shift without first meeting and conferring with petitioner. We disagree.

Petitioner does not contest the County's *power* to assign employees, but contends the County must meet and confer before exercising this power. We agree. The power to "assign" employees is not inconsistent with the meet and confer requirement. As long as the County meets and confers in good faith, it may assign its employees however it sees fit.

Nor do we construe the "county rights" provision of the agreement to be a waiver of the meet and confer in good faith requirement. This right is expressly reserved in article V, section 14 of the MOU which provides: "[t]he employee retains all rights conferred by section 3500, et seq., of the Government Code . . . ." One of the rights conferred on employees by the MMBA is the right to meet and confer under section 3505. Subdivision (d) of the "county rights" provision further states "[t]his agreement is not intended to restrict consultation with the Union regarding matters within the right of the County to determine." County argues "consultation" in this context means an informal discussion rather than the formal "meet and confer" process; we fail to see a significant distinction. ■■■ "Consultation" means "a council or conference (as between two or more

persons) usually to consider a special matter." (Webster's New Internat. Dict. (3d ed. 1971) p. 490.) In a related context, it has been held that "'consultation in good faith'" is the equivalent of "'meet and confer in good faith.'" (*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 821 [165 Cal.Rptr. 908]; *International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 976 [129 Cal.Rptr. 68].)

■ "Courts examine the defense of waiver carefully in order to ensure the protection of a party's rights, especially when these rights are statutorily based." (*Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1011 [175 Cal.Rptr. 105].) ■ The claimed waiver in this case is hardly the required "'clear and unmistakable'" relinquishment. (*Ibid.*)

The County further urges the question of waiver should not be restricted to the face of the MOU, citing a 1974 decision of the National Labor Relations Board for the holding that the "clear and unmistakable" waiver standard has been replaced by a "totality of the circumstances" test which considers the wording of the waiver clause, the bargaining process, and other practices of the parties among the relevant factors. (See *Radioear Corporation* (1974) 214 N.L.R.B. 362.) The totality of the circumstances in this case, it is urged, show the parties mutually intended a waiver of the meet and confer requirement regarding the assignment of employees.

■ California courts have often looked to federal law for guidance in interpreting state labor law provisions which parallel federal statutes. Such federal authorities provide a useful starting point, but they do not necessarily establish limits on the representational rights of California public employees. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453].) ■ The "clear and unmistakable" waiver test, announced in *Oakland Unified School Dist.* v. *Public Employment Relations Bd., supra,* 120 Cal.App.3d at page 1011, is the appropriate standard to be applied in this case. California public employees do not have available the remedy of a strike as did the private employees in *Radioear.* (See *Pasadena Unified Sch. Dist.* v. *Pasadena Federation of Teachers* (1977) 72 Cal.App.3d 100, 105-106 [140 Cal.Rptr. 41].) It would be anomalous to deprive public employees of their only statutory mechanism for presentation of their views (the meet and confer requirement) on the basis of less than a clear and unmistakable waiver of such right.

Assuming, however, that California law permits a waiver on the standard articulated in *Radioear Corporation, supra,* we conclude the totality of cir-

cumstances do not show a waiver. The County points to numerous unilateral reassignments of employees since 1971. The record reveals, however, that most of these changes involved only a single employee being moved from one established shift to another. Of the three shift changes involving multiple employees, two were pursuant to an agreement with the union. Moreover, the statutory meet and confer requirement is not invoked except "upon request by either party . . . ." (§ 3505.) There was no evidence any prior union requested a meet and confer session on any of these changes.[2] That prior union representation chose not to meet and confer does not mean petitioner, the present union representative, has waived its right to do so in this situation.

The County urges it originally requested the county rights provision in 1971 to protect itself from the statutory bargaining requirements. Nothing in the record demonstrates petitioner had this same intent when it signed a subsequent agreement 10 years later and such an intention on the part of the County was undisclosed in 1981 when the agreement at issue was executed. Nor does the record show that either the practices or mutual intentions of the parties indicated the County's right to "assign" employees was to be considered a waiver of petitioner's right to meet and confer on the matter. In *Radioear,* the National Labor Relations Board found a "conscious, knowing waiver" of the employer's bargaining obligation. (*Radioear Corporation, supra,* 214 N.L.R.B. at p. 364.) Under either standard, we conclude there was no waiver of the County's obligation to meet and confer on the instant shift change.

### 3. *Exhaustion of administrative remedies*

■ The County further contends petitioner's failure to exhaust the grievance-arbitration procedure provided by the MOU precluded the trial court from granting judicial relief. This precise exhaustion argument was raised and rejected in *Vernon Fire Fighters* v. *City of Vernon, supra,* 107 Cal.App.3d at p. 825.) We concur in the *Vernon* holding and conclude it is dispositive.

In *Vernon Fire Fighters,* the city passed a rule prohibiting firemen from washing their cars on city premises while not on duty. (107 Cal.App.3d at p. 806.)[3] The MOU contained a grievance procedure providing for arbitra-

---

[2]Petitioner is the fourth union to represent the custodial workers since the initial agreement in 1971.

[3]The court in *Vernon Fire Fighters* found that because the firefighters had been permitted to wash their cars with city facilities since 1923, the rule prohibiting this widespread practice affected an "implied condition of employment." (107 Cal.App.3d at p. 817.)

tion of disputes. A grievance was defined as " 'a dispute arising out of the interpretation or application of any provision of this Memorandum of Understanding or any Ordinance, Resolution or written policy of Vernon . . . .' " (*Id.*, at p. 826.) The court held the dispute over the rule was not subject to the arbitration procedure because the issue was not the " 'interpretation or application' " of the rule, but rather the city's obligation to meet and confer prior to its enactment. (*Ibid.*)

Similarly, the MOU in the present case defines "grievance" as a "complaint . . . or a dispute . . . involving the interpretation, application or enforcement of the express terms of the Agreement." The County urges *Vernon Fire Fighters* does not apply because the issue here is the interpretation of the word "assign" in the MOU. We disagree. There is no dispute over the County's right to assign its employees. As in *Vernon Fire Fighters,* the key issue is the County's obligation under the MMBA to meet and confer before making such a wholesale assignment. It is well settled that a unilateral change in a matter within petitioner's scope of representation is a per se violation of the duty to meet and confer in good faith. (107 Cal.App.3d at p. 823.) A rule passed in violation of the procedural requirements of the MMBA is void, and therefore subject to neither interpretation nor application. (*Id.*, at p. 826.) The trial court correctly found petitioner was not required to exhaust the present inapplicable arbitration procedure. (*Ibid.*)

 The County finally urges that even assuming there is no exhaustion problem, the trial court should have ordered the matter to arbitration under the "*Collyer* doctrine." (See *Collyer Insulated Wire* (1971) 192 N.L.R.B. 837.) This "doctrine" advocates a species of judicial abstention when the dispute between the parties arguably falls within the contractual arbitration procedure. "When the parties have contractually committed themselves to mutually agreeable procedures for resolving their disputes during the period of the contract, we are of the view that those procedures should be afforded full opportunity to function." (*William E. Arnold Co.* v. *Carpenters* (1974) 417 U.S. 12, 16-17 [40 L.Ed.2d 620, 625, 94 S.Ct. 2069]; citing *Collyer, supra,* at pp. 842-843.)

While a similar policy in favor of arbitration has been adopted in California, "*there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .*'" (*Service Employees International Union* v. *County of Napa, supra,* 99 Cal.App.3d at p. 957.) (Italics in original.) Thus, "an order directing arbitration should be granted 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " (*O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 491

[30 Cal.Rptr. 452, 381 P.2d 188]; citing *Steelworkers* v. *Warrior & Gulf Co.* (1960) 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347].) ▮▮▮▮ We have determined the present dispute is not a "grievance" within the meaning of the MOU's arbitration provisions. It is therefore not within the ambit of the arbitration agreement. The "*Collyer* doctrine" has no application in this case and the trial court properly refused to order the matter to arbitration.

The judgment is affirmed.

Regan, Acting P. J., and Boskovich, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 10, 1983.

---

*Assigned by the Chairperson of the Judicial Council.