Filed 3/13/13  City of San Jose v. Internat. Assn. of Firefighters Local 230 CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF SAN JOSE, | H037197 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CV075858) |
| v. | |
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 230, | |
| Defendant and Appellant. | |

Defendant, International Association of Firefighters, Local 230 (Local 230) is an employee organization representing the firefighters employed by plaintiff, City of San Jose (City).  In the course of labor negotiations between the parties, Local 230 offered two bargaining proposals related to City's Police and Fire Department Retirement Plan (Plan), a defined benefit pension plan established for eligible police and fire department retirees.  One of the proposals sought to ensure that police and fire participants were equally represented on the board that administers the Plan.  The other concerned the manner in which the Plan tracks factors used to evaluate the Plan's funding status.  City refused to negotiate the two proposals, maintaining that they do not fall within the scope of mandatory bargaining as defined by City's charter.  The trial court held that both proposals were moot since negotiations had long since been finalized and, as to the first proposal, a new City ordinance gave the two departments equal representation on the Plan's administrative board.  On the merits the trial court found that City had no duty to

bargain because neither proposal related to wages, hours, or other terms and conditions of employment.

We agree that the first proposal is moot. City's new ordinance gave Local 230 exactly what it sought--equal representation. As to the second proposal, we disagree with the trial court. As Local 230 describes it, the second proposal seeks to track data and determine the cost of benefits for firefighter participants separately from police participants. That proposal is not moot; it presents a continuing actual controversy. And, since the cost of benefits is related to the availability of benefits, the proposal is one about which City must negotiate. Accordingly, we shall reverse.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In January 2004, City and Local 230 commenced negotiations for a new memorandum of agreement (MOA) establishing terms of employment for City firefighters. Negotiations reached impasse on certain points and the parties initiated procedures prescribed by San Jose City Charter section 1111 (section 1111). Section 1111 requires City to "negotiate in good faith with the recognized fire and police department employee organizations on all matters relating to the wages, hours, and other terms and conditions of City employment . . ." and calls for compulsory interest arbitration when the parties are unable to resolve disputes over such issues.[2] Arbitration

---

[1] We solicited supplemental briefing to ascertain the parties' view as to the effect of the June 2012 passage of Measure B, a pension modification initiative, upon this appeal. The parties agree that passage of the initiative does not affect their arguments.

[2] Section 1111 provides, in pertinent part, as follows:

"The City, through its duly authorized representatives, shall negotiate in good faith with the recognized fire and police department employee organizations on all matters relating to the wages, hours, and other terms and conditions of City employment, including the establishment of procedures for the resolution of grievances submitted by either employee organization over the interpretation or application of any negotiated agreement including a provision for binding arbitration of those grievances. Unless and until agreement is reached through negotiations between the City and the recognized employee organization for the fire or police department or a determination is made (continued)

2

of the unresolved issues commenced in 2006.  Local 230 offered a number of bargaining proposals; City refused to bargain over proposals 26 and 28.

Proposal 26 involves the makeup of the Police and Fire Department Retirement Board (Board), the body that administers the Plan.  At the time Local 230 made the proposal, the Board was made up of one employee from the fire department, one employee from the police department, one retiree from either the fire or police departments, and four outside members.  Since there was only one retiree member, one of the departments always had an additional representative on the Board.  Accordingly, Local 230 proposed:  "There shall be the same number of firefighter representatives to the [Board] active and retired, as the police officers, active and retired."

Proposal 28 is aimed at the manner in which the Board tracks certain actuarial data.  In the past, City had jointly negotiated retirement benefits with the police and fire departments and the two departments had the same retirement benefits.  Local 230 wanted to continue the joint negotiation but City held separate negotiations with the San Jose Police Officers Association (POA) in 2006, which resulted in police department employees having retirement benefits that are different from those available to fire department employees.  Because of the difference, Local 230 offered proposal 28, which is:  "The costing methodology for new and/or separate retirement benefit enhancements for police and fire participants shall be through subaccounts separately tracking benefits,

---

through the arbitration procedure hereinafter provided, no existing benefit or condition of employment for the members of the fire department or police department bargaining unit shall be eliminated or changed.

"All disputes or controversies pertaining to wages, hours, or terms and conditions of employment which remain unresolved after good faith negotiations between the City and either the fire or police department employee organization shall be submitted to a three-member Board of Arbitrators upon the declaration of an impasse by the City or by the recognized employee organization involved in the dispute."

3

assets, payments and experience and requiring separate assumptions between police and fire."

City maintained that section 1111 does not require negotiation of either proposal. City filed a complaint for declaratory and injunctive relief, stating, "City contends that Items 26 and 28 proposed by [Local 230] are not arbitrable in that such proposals do not impact the wages, hours, or terms and conditions of the bargaining unit and are not mandatory subjects of bargaining." City's complaint went on to allege that proposal 28 usurped the authority and discretion of the Board and, even if both proposals were subject to mandatory bargaining, they could not be the subject of the current arbitration since the POA was not a party. Local 230 filed a counter-petition to compel arbitration of the two proposals.

The trial court dismissed the case after concluding that intervenor, Public Employment Relations Board (PERB), had exclusive initial jurisdiction. Local 230 appealed that ruling. This court held that under Government Code section 3509, subdivision (e), the court, not PERB, had jurisdiction. (*City of San Jose v. International Assn. of Firefighters*, *Local 230* (2009) 178 Cal.App.4th 408, 425.) Accordingly, the judgment of dismissal was reversed and the matter returned to the trial court.

Meanwhile, City and Local 230 had reached agreement on other issues and a new MOA, omitting any agreement on proposals 26 and 28, had been finalized in August 2007. That MOA expired June 30, 2009. On December 3, 2010, after resolution of the first appeal, the trial court denied Local 230's motion to compel arbitration of proposals 26 and 28. The court concluded that the dispute was moot since the MOA in which Local 230 had sought to include the proposals had been finalized and expired. Proposal 26 was moot for the additional reason that City had recently adopted an ordinance that changed the composition of the Board, increasing the number of members from seven to nine, including one active employee and one retiree from each of the two member departments, giving the two departments the equal representation Local 230 had proposed. The court

4

also considered the merits of the proposals and concluded that they were not subject to arbitration under section 1111 because they did not relate to wages, hours, or working conditions.

On December 10, 2010, in the course of negotiations for a new MOA, Local 230 informed City that it considered the two proposals to be applicable to the ongoing negotiations. City again refused to negotiate the proposals, citing the trial court's ruling on the merits in its order denying Local 230's petition to compel arbitration.

The trial court entered judgment in favor of City on June 21, 2011. The court did not issue a separate judicial declaration but incorporated by reference its order denying the petition to compel arbitration. This timely appeal followed.

## II. DISCUSSION

### A. *Legal Framework*

#### 1. *Section 1111*

The substantive issue before us is whether proposals 26 and 28 are encompassed by section 1111's mandatory bargaining requirement. Section 1111, which requires City to negotiate with employee representatives and to arbitrate unresolved disputes over "wages, hours, and other terms and conditions of City employment," tracks the language of the Meyers-Milias-Brown Act (MMBA), which, in turn, is patterned after the National Labor Relations Act (NLRA). Because of the parallel language and purpose of these laws, we may look to cases interpreting them for guidance in determining the scope of section 1111's mandatory bargaining requirement. (Cf. *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 615-617 (*Fire Fighters Union*).)

Under the MMBA, the phrase " ' "wages, hours, and other terms and conditions of employment" ' " is to be liberally construed, consistent with the " 'generous interpretation' " federal courts have applied to the same phrase in the NLRA. (*Social Workers' Union*, *Local 535 v. Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391.) Under the NLRA, the duty to bargain applies to "issues that settle an aspect of the

5

relationship between the employer and employees." (*Chemical Workers v. Pittsburgh Glass* (1971) 404 U.S. 157, 178.) Some management decisions, such as decisions about advertising or products design, have such an attenuated effect upon the employer/employee relationship they are never subject to the duty to bargain. (*First National Maintenance Corp. v. NLRB* (1981) 452 U.S. 666, 676-677.) Other decisions are not primarily about an aspect of the employment relationship but may have impacts that must be negotiated depending upon the facts. (*Id.* at p. 677.) A third category of decisions are those that directly impact the employment relationship, such as decisions about schedules or workplace rules. These are always mandatory subjects of bargaining. (*Ibid.*) Retirement benefits fall within this last category. "[T]he future retirement benefits of active workers are part and parcel of their overall compensation." (*Chemical Workers v. Pittsburgh Glass*, *supra*, at p. 180.) Thus, it is generally true that a proposal affecting employees' retirement benefits is subject to the mandatory bargaining requirement.

### 2. *Justiciability*

Before we consider whether a proposal could affect retirement benefits, or any other terms and conditions of employment, we must decide whether the controversy is one that we may resolve. A court may decide only justiciable controversies. (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 813; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 21, pp. 84-86.) To be justiciable, a controversy must be ripe for adjudication. "A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22.) Moot cases are at the other end of the justiciability spectrum. Moot cases are "[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." (3 Witkin, Cal. Procedure, *supra*, Actions, § 21, p. 86.) A case is moot when "the question addressed

was at one time a live issue in the case," but has been deprived of life "because of events occurring after the judicial process was initiated." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 120.) When events render a case moot, the court, whether trial or appellate, should generally dismiss it. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1575.)

Local 230 insists that the instant dispute is not moot because City's declaratory relief action described an actual controversy over whether section 1111 requires proposals 26 and 28 to be arbitrated. But a declaratory relief action is not exempt from the justiciability analysis. Code of Civil Procedure section 1060 provides for declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties." The " 'actual controversy' " to which this section refers is one "which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do." (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 117; see also, *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728, 741.) Cases "in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination," are unripe and not justiciable. (3 Witkin, Cal. Procedure, *supra*, Actions, § 21, p. 85.)

The issues presented here span the justiciability spectrum. As we shall explain below, the dispute over proposal 26, the Board composition proposal, is moot; the dispute over the arbitrability of a proposal involving the makeup of the Board, generally, is unripe; and the dispute over the arbitrability of proposal 28, the "data tracking" proposal, is a continuing actual controversy that we may resolve.

7

### B. Proposal 26–Retirement Board Composition

Local 230's original proposal 26 is unquestionably moot. The proposal was to give the police and fire departments equal representation on the Board. City's new ordinance gave the two departments equal representation. That dispute is resolved. The trial court was correct to deny Local 230's petition to compel arbitration of this proposal.

Local 230 maintains that City's ordinance did not moot the proposal since City also increased the total number of positions on the Board, which diluted the voting power of the fire department representatives.[3] But proposal 26 was very specific in proposing only equal representation. Local 230's argument is, in effect, that *any* proposal relating to the composition of the Board is subject to the bargaining requirement of section 1111. And, indeed, City has argued that the makeup of the Board is not a subject about which it must bargain. Clearly, the parties do have a continuing controversy over the arbitrability of a proposal relating to the composition of the Board. That dispute is not moot; but it is not ripe. The cases cited by both sides make that clear.

In *Local 964*, *United Brotherhood of Carpenters and Joiners* (1970) 181 NLRB 948, 952, a union demanded that an employer association select its trustees for a multi-employer trust fund from a particular category of employers. The union failed to show that the proposal could have even an arguable relationship to employee benefits. (*Id.* at p. 952, fn. 15.) Accordingly, the employer was entitled to refuse to negotiate the demand. (*Id.* at p. 952.)

---

[3] As City pointed out at oral argument, the change did not dilute the voting power of the two employee organizations. As originally composed, the Board had three employee positions out of seven, or 43 percent. As revised, it had four employee positions out of nine, or 44 percent. As to the firefighters only, their original voting power was one out of seven (14 percent) whenever the retiree member was from the police department. Under the new ordinance the firefighters are guaranteed two out of nine positions, or 22 percent.

8

In contrast, in *Oakland Unified School Dist. v. Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007 (*Oakland Unified*), a case decided under the Educational Employment Relations Act (Gov. Code, § 3540), the employer had unilaterally changed health plan administrators, which deprived employees of advantages provided by the previous administrator, Blue Cross, such as guaranteed admission to Blue Cross member hospitals outside the area. (*Oakland Unified*, *supra*, at pp. 1012-1014.) Even though the change did not affect health care coverage, it did result in the loss of other benefits and, therefore, the decision "had a material impact on the terms and conditions of employment" and should have been negotiated. (*Id.* at p. 1014.)

As demonstrated by these two cases, a proposal relating to the makeup or identity of the administrative body that oversees a benefit fund is a mandatory subject of bargaining if it is shown that the proposal has some connection to benefits or other terms and conditions of employment. It is a fact-driven inquiry and cannot be decided as a matter of law. We recognize that in the present case we are concerned with prearbitration bargaining and not with a challenge to conduct by an employer, as was the case in *Oakland Unified*, *supra*, 120 Cal.App.3d 1007. As Local 230 has argued, we are bound to interpret bargaining proposals broadly, allowing the facts, proposals, and concessions, to be fully developed and explored in the arbitration proceedings. (*Fire Fighters Union*, *supra*, 12 Cal.3d at p. 615.) But since there is no specific proposal before us, there is nothing to interpret; the parties are seeking, in effect, an advisory opinion that could only be based upon speculation or hypothetical facts. This court cannot provide definitive and conclusive relief. Accordingly, the issue is not one either the trial court or this court can decide.

### C.    *Proposal 28-Data Tracking*

We reach a different result with regard to the justiciability of proposal 28. We agree with the trial court that Local 230's petition to compel arbitration of this proposal is moot to the extent it relates to the now-expired MOA. But City's declaratory relief action

9

describes an actual controversy--whether proposal 28 is subject to section 1111's arbitration requirement--that has never been resolved. The mere fact that the parties entered into some agreement "does not lead to a conclusion that the parties intended in that agreement to resolve this dispute." (*Oakland Unified*, *supra*, 120 Cal.App.3d at p. 1010.) Indeed, Local 230 resubmitted the proposal in 2010 and was again rebuffed by City so that the controversy continues. Thus, the question is not moot and, because there is a specific proposal at issue for which the court may provide definitive and conclusive relief by judgment, it is ripe for adjudication.[4]

On the merits, our first problem is deciding what proposal 28 means. The parties' briefs contain two very different interpretations. City argues that proposal 28 seeks to change the actuarial cost method adopted by the Board, which, City maintains, is a decision that must be left to the Board. Local 230 insists that the proposal merely involves record-keeping; it seeks to have the Board track certain data separately for the two member departments, using whatever cost method the Board chooses to use.

On its face, proposal 28 states that the "costing methodology for new and/or separate retirement benefit enhancements for police and fire participants shall be through subaccounts separately tracking benefits, assets, payments and experience and requiring separate assumptions between police and fire." Neither side defines "costing methodology," but as we understand it, "costing methodology" refers to the actuarial cost method (or funding method) adopted by plan administrators and utilized by actuaries in valuing a retirement plan.

---

[4] The question is one that is likely to come up again so long as City and the POA continue to negotiate retirement benefits on a bilateral basis. Thus, even if the proposal is technically moot, the issue is of sufficient importance and likely to evade review so that we exercise our discretion to consider it. (*Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 815.)

10

Actuaries predict the future financial operation of a retirement system by making assumptions regarding the variables in the system. (65 Ops.Cal.Atty.Gen. 571, 572 (1982).) These variables include the age of the individuals entering and retiring from employment, life expectancy, compensation during active service, inflation factors, contributions, investment income, and benefits. The actuary takes these factors and, using the actuarial methods adopted by the plan's administrative body, values the plan and makes projections to guide its administration. (*Ibid*.)

One reason an actuary values a retirement plan is "to determine how much employers and employees should contribute to the plan during the upcoming year." (Funding Pensions and Retiree Health Care for Public Employees: A Report of the Public Employee Post-Employment Benefits Commission (2007) How to Read an Actuarial Valuation, p. 232 (Benefits Commission Report).)[5] As part of the valuation process, the actuary uses the cost method adopted by the plan to allocate a portion of the total present value of future benefits to each year of service. "The portion allocated to a year of active member service is the normal cost for that year. The normal cost is the basis for all the contribution and liability results in the valuation. . . . It can be thought of as the annual premium that the [*sic*] must be contributed to fund the benefit in the absence of any surplus or unfunded liability." (*Id.* at p. 234.) That is, the cost method is used to determine what it will cost to provide the promised benefits. There is more than one cost method that actuaries use. In the present case, the Board has adopted the "entry age normal" method.

Although City has approached the issue as if Local 230 were attempting to change the cost method the Board adopted, and argued below and in its brief on appeal, that it is not bound to negotiate such a proposal, City acknowledged at oral argument that proposal

---

[5] <http://www.pebc.ca.gov/images/files/final/080107_PEBCReport2007.pdf> [as of Mar. 13, 2013].

11

28 does not contemplate changing the cost method. City concedes that the proposal seeks only to separately track data for the two participating departments.[6] Because both sides now agree that proposal 28 does not seek to change the Board's selected cost method, we need not consider City's argument that such a proposal is nonnegotiable.[7]

Proposal 28 seeks to have the selected cost method applied separately to the two groups of participants. According to Local 230, "[t]he effect of the proposal is to produce two plans within a plan, but with all parties preserving more options as to the future of the bargaining relationships." Local 230 cites *Carrier Corporation and Sheet Metal Workers Local 527* (1995) 319 NLRB 184 (*Carrier*), in supporting the position that proposal 28 is arbitrable.

----

[6] At oral argument City argued, for the first time, that proposal 28 is moot because the Board already tracks data separately. City asked this court to take judicial notice of City's Municipal Code section 3.36.1520, which, City claims, calls for the separate tracking Local 230 has proposed. We allowed Local 230 to submit a supplemental brief responding to the new argument and request for judicial notice. In its supplemental brief Local 230 maintains that we should treat City's new argument as waived. For reasons of fairness, we agree that a point raised as late in the process as this one was should be considered waived. (*Transcontinental Ins. Co. v. Insurance Co. of State the of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1309.) Accordingly, we decline to consider City's mootness argument and deny the request for judicial notice because the material is not relevant to any issue on appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 [any matter to be judicially noticed must be relevant to a material issue].)

[7] In 1990, the Board recommended switching to the entry age normal method. After receiving the Board's recommendation, City directed its staff to meet and confer with representatives of the police and fire departments on the recommendation. Local 230 maintains that City acknowledged then that such a proposal was a mandatory subject of bargaining and, therefore, that it is estopped from taking the opposite position now. Local 230 does not attempt to describe the elements of estoppel and offers no other authority for the contention so that we may reject it for that reason alone. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.) Furthermore, since Local 230 insists that its proposal is not intended to change the cost method, the argument is beside the point.

12

In the *Carrier* case, the NLRB held that the employer's unilateral decision to merge several retirement plans into one, without involving or informing the union, was an unfair labor practice. The opinion noted that "changes involving pension plans generally are considered mandatory subjects of bargaining" and typically have a significant effect upon benefits. But the employer argued that since the merger did not result in any changes to benefit levels, or benefit administration, the changes were insufficient to require negotiation. (*Carrier*, *supra*, 319 NLRB at p. 193.) The NLRB rejected the argument. The merger at issue involved the consolidation of numerous smaller plans into one large plan, resulting in $4 million to $6 million in savings for the employer and a retirement plan that was 35-percent overfunded. (*Id.* at pp. 193-194.) These positive effects had a significant impact upon the employees' terms and conditions of employment--their retirement fund was on a sounder financial footing and their employer enjoyed significant savings, part of which could have been included in contract negotiations for future benefits had the union been informed of the merger. (*Id.* at p. 193.)

City argues that Local 230 has not shown that its proposal would have any effect upon retirement benefits. City cites the rule that an action by an employer falls within the scope of representation only if it has "a *significant* effect on the 'wages, hours, and other terms and conditions of employment' of the bargaining-unit employees." (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 659.) As Local 230 points out, however, the cases in which that test was developed were cases in which the employer had taken unilateral action that was subsequently challenged by the employee organization as an unfair labor practice. (See, e.g., *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 638.) The present case involves a preliminary decision as to the scope of interest arbitration. In that situation we must keep in mind the dynamic nature of the arbitration process. (*Fire Fighters Union*, *supra*, 12 Cal.3d at p. 614.)

13

In interest arbitration, " 'the positions of the parties and their interaction with the arbitrator is in a state of constant flux. Proposals get modified and non-negotiable positions become negotiable as the parties sort out their priorities, develop understanding of the implications of their positions, and perceive alternative solutions which they may not previously have considered. To determine what is arbitrable and what is not against this changing context is a bit like trying a balancing act in the middle of a rushing torrent.' " (*Fire Fighters Union*, *supra*, 12 Cal.3d at pp. 614-615, quoting Grodin, *California Public Employee Bargaining Revisited: The MMB Act in the Appellate Courts* (1974) Cal. Pub. Employee Rel. No. 21, p. 17.) In determining the arbitrability of a prearbitration bargaining proposal, we exercise the utmost in judicial restraint in order to avoid congealing the arbitration into " 'fixed molds' " before the facts, proposals, and concessions, have been fully developed and explored in the arbitration proceedings. (*Fire Fighters Union*, *supra*, at p. 615.)

Here we are not considering an action by an employer. We have before us a prearbitration bargaining proposal, the final shape of which has not been decided so that its actual effect cannot be known. A proposal to create a plan within a plan, as Local 230 describes it, presents considerations similar to those in the *Carrier* case. Differences in variables pertaining to police and fire department participants could mean that the cost of benefits for the two groups would be different if determined separately. And, as Local 230 points out, the cost of benefits affects the availability of and bargaining for benefits in the future. Thus, the proposal could impact retirement benefits. Given that potential we conclude that the proposal is subject to mandatory bargaining under section 1111. The proposal may be modified or rejected altogether as the parties sort out their priorities and develop an understanding of the ultimate effect of such a change. But we leave that to the parties and the arbitrator to work out. This "cautious judicial approach" does not risk undue expansion of the scope of representation since City may reject the resulting award if it invades City's authority or otherwise exceeds the jurisdiction of the arbitrator.

14

(*Fire Fighters Union*, *supra*, 12 Cal.3d at p. 615, fn. 6; see also Code Civ. Proc., § 1286.2, subd. (a)(4).)

### D. *Participation of POA*

As we noted above, for many years prior to 2006 City had negotiated retirement benefits jointly with Local 230 and the POA. In litigation that preceded the commencement of this case, City sought an order compelling bilateral arbitration of retirement benefits between it and the POA; Local 230 sought an order compelling three-party arbitration. The trial court granted City's request and rejected Local 230's. That is how the two departments have come to have differing retirement benefit schedules while participating in one retirement fund.

City now insists that arbitration of Local 230's proposals related to the Plan must be conducted on a tripartite basis. In effect, City maintains that it is not required to negotiate separately with Local 230. City cites no authority for its argument. Indeed, the law is to the contrary. (See, e.g., *Boston Edison Co.*, *369* (1988) 290 NLRB 549, 555 [refusing to bargain separately with union that had timely withdrawn from multilateral pension plan negotiations is an unfair labor practice].) And, as Local 230 argues, City is barred by the doctrine of judicial estoppel from asserting the opposite of the position upon which it prevailed in prior proceedings. (*Ajaxo Inc. v. E\*Trade Financial Corp.* (2010) 187 Cal.App.4th 1295, 1314.) Accordingly, we reject the argument.

### III. CONCLUSION

To summarize, proposal 26 to alter the makeup of the Board to give police and fire department participants equal representation is moot. There is no other justiciable board-composition proposal before us.

Proposal 28 is not moot. To the extent the proposal asks that data be tracked separately for police and fire department participants to create, in effect, a separate plan within a plan for the members of Local 230, the proposal could affect retirement benefits and is, therefore, arbitrable.

15

## IV.   DISPOSITION

The judgment is reversed.  The trial court shall enter a new judgment consistent with the opinions expressed herein.  The parties shall bear their own costs on appeal.

_____
Premo, Acting P.J.

WE CONCUR:

_____
Bamattre-Manoukian, J.

_____
Grover, J.

16